FLORIDA BLUE RIDGE CORPORATION
v. TENNESSEE ELECTRIC
POWER CO.

No. 9258.

Circuit Court of Appeals, Fifth Circuit.

Oct. 17, 1939.

Rehearing Denied Dec. 13, 1939.

914

J. Howell Green, of Decatur, Ga., and Augustine Sams, of Atlanta, Ga., for appellant.

Dan MacDougald, of Atlanta, Ga., and William Butt, of Blue Ridge, Ga., for appellee.

Before SIBLEY, HUTCHESON, and McCORD, Circuit Judges.

On Rehearing: Before SIBLEY, HUTCHESON, and HOLMES, Circuit Judges.

SIBLEY, Circuit Judge.

The plaintiff-appellant, Florida Blue Ridge Corporation, a corporation of Delaware, sued Tennessee Electric Power Company, a corporation of Maryland but domesticated in Georgia, to remove a cloud upon its title to lands in Georgia caused by a deed held by the Tennessee Company from Toccoa Electric Power Company purporting to convey easements over the lands, to declare the easements abandoned, to enjoin the Tennessee Company from trespassing on the lands, and for damages. The suit was dismissed on motion as setting forth no cause for suit, and appeal taken.

The principal facts alleged are, in order of time, these: The Tennessee Company, operating hydro-electric generating and distribution plants in Tennessee, desired to establish one higher on the same stream in Georgia. As a foreign corporation it could not under Georgia law condemn the necessary property. It organized a Georgia corporation, called Toccoa Power Company, subscribing for all the stock, with qualifying shares issued to five of its officers and employes. The charter was held invalid. Rogers et al. v. Toccoa Power Co., 161 Ga. 524, 131 S.E. 517, 44 A.L.R. 534. Then the Toccoa Electric Power Company was chartered, the stock being similarly held. On a suit by the same persons this charter was sustained. Rogers v. Toccoa Electric Power Co., 163 Ga. 919, 137 S.E. 272, and the Company in 1927 condemned easements over the lands of Rogers and others, paid for them, and established a power dam and a generating and transmission plant, and began operating it. The plaintiff corporation acquired these lands expressly "subject to such rights, if any, as Toccoa Electric Power Company had by reason of condemnation proceedings in Fannin County, Georgia." On January 6, 1936, Toccoa Electric Power Company deeded to Tennessee Electric Power Company all its property, real, personal and mixed, including easements, rights and franchises, in Georgia and Polk County, Tennessee, the deed being attested and acknowledged in Tennessee. The deed recites that the Tennessee Company is duly authorized to carry on business in the States of Tennessee and Georgia. On June 8, 1936, the Tennessee Company applied to the Georgia Secretary of State for domestication which was granted July 3, 1936. November 30, 1936, the Toccoa Company filed petition to surrender its charter, which was granted December 29, 1936, and that corporation was dissolved. The Tennessee Corporation has since maintained the dam in Georgia, withdrawing water from the lake at will not only to generate power there but to feed its plants below, causing harmful variations in the Lake level and yielding profits to the Tennessee Company, for which compensation is sought as for a trespass.

It is not claimed in the petition or brief that what the Tennessee Company is doing is in excess of the easement condemned and therefore a trespass, but only that the easement is at an end and plaintiff's land is free of it; or at least that the Tennessee Company cannot enjoy it.

On the last contention a point is made that the attempted transfer of the easement was made in Tennessee and is therefore void. There is no allegation as to where and how the President and Secretary under the corporate seal were authorized thus to sell all the property and franchises of the corporation. Since their authority is not denied we are bound to presume that it was given regularly in stockholders' meeting held at a proper time and place. So presuming, the deed is as valid as if it had been the individual deed of the persons executing it to their own property in Tennessee and Georgia. Land in Georgia may be freely conveyed by deed executed elsewhere if the deed in form and substance complies with the Georgia law of deeds. The propriety of deeds to Georgia lands executed in another State is expressly recognized by statutes prescribing how they shall be attested for record in Georgia. Code Sec. 29-409. This deed was thus attested. It is not invalid as to the Georgia land conveyed.

It is also urged that the State of Georgia had not consented to the transfer of the easement and franchises by its corporation, and the State of Maryland had not consented for its corporation to accept them. The charter of the grantee, the Maryland Corporation, is not exhibited nor its scope pleaded. We have no reason to suppose that it did not authorize the exercise of franchises and easements in Georgia of the same sort it was exercising in Tennessee. The record is also silent as to what the Georgia corporation's charter contained, but we may assume it gave the usual power to sell any or all of its property. See Biggs v. McBrayer, 174 Ga. 244, 162 S.E. 787. It could sell an easement of flowage as mere property. But it is said that what was really sold was the franchise of making and selling electricity to the public, a public utility business regulable by the Georgia Public Service Commission, which was no more transferable than the franchise to run a public railroad. It is true that a railroad sold or leased without legislative provision otherwise leaves the original grantee of the franchise responsible to the public for its right use. Singleton v. Southwestern R. R., 70 Ga. 464, 48 Am.Rep. 574; Bennett v. Western & Atlantic R. R., 42 Ga.App. 821, 157 S.E. 365. But there is no holding that by an unauthorized sale the right of way easements are destroyed, or that the owners of the servient lands can stop the operation of the railroad. The further claim that the two corporations were competitors and the transfer was to suppress competition and create monopoly and therefore contrary to public policy is supported by no facts. The petition in substance says there was no competition, that the Tennessee Company has always owned and controlled the Toccoa Company and its business, and except in form things are now as they have always been. If public policy has been violated it lies with the State and not a private landowner to set the matter right. American Mortgage Co. v. Tennille, 87 Ga. 28, 13 S.E. 158, 12 L.R.A. 529; State of Georgia v. Central of Ga. R. Co., 109 Ga. 716, 35 S.E. 37, 48 L.R.A. 351; Kerfoot v. Farmers' & Merchants' Bank, 218 U.S. 281, 31 S.Ct. 14, 54 L.Ed. 1042. On such a contention a stockholder might have better standing. Central R. Co. v. Collins, 40 Ga. 582, 583. Under the Georgia statutes, Code, § 93-304, the Public Service Commission has authority over "electric light and power companies, corporations, or persons owning, leasing, or operating public * * * electric light and power plants furnishing service to the public." It does not matter whether the corporation be foreign or domestic. A transfer of the business from one to the other does not affect the public or the powers of its representative the Commission. Nor does it affect practically this plaintiff as owner of land subject to an easement of flowage. Indeed on the subject of legislative consent to this transaction it is plausibly argued that an explicit consent is found in statutes embodied in Code Sec. 94-1014, for a domestic or foreign electric railroad corporation to acquire the property rights and franchises of another such railroad company or a power company in Georgia, and for the latter to dispose thereof. We do not rest the case on this statute because it does not well appear that the Tennessee Company is such a corporation as the statute mentions. But we may again observe that for all we know the State of Georgia in the Toccoa charter may have granted its franchises to it and its assigns.

There remains the question of private land law, whether the easements, because acquired through condemnation by the Toccoa Company, have ceased because of the owners' conveyance and dissolution. The plaintiff may certainly raise this question, and if the easements have ceased

916

some or all of the relief sought should be had. The condemnation proceeding described the easements, among others, as including the right "to construct and maintain said dam, flow backwater, and for other uses necessary, needful and useful to said purposes, and also the right forever to enter upon and use the same * * *." A perpetual easement is described. In assessing compensation for the lands overflowed, their value and all consequential damages to other lands adjacent were presumably allowed and paid. The condemnation statute, Code, § 36-606, states: "Upon the payment, by the corporation or person seeking to condemn, of the amount of the award, and final judgment on appeal, such corporation or person shall become vested with such interest in the property taken as may be necessary to enable the corporation or person taking to exercise its franchise or conduct its business; and whenever the corporation or person shall cease using the property taken for the purpose of conducting its business, said property shall revert to the person from whom taken, his heirs or assigns * * *." The contention is that the right to use is vested in the condemnor only, and that this is emphasized by the mention of "heirs and assigns" in describing those to whom reversion accrues and omitting them in describing those whose cessation of use causes the reverter. That construction is supported by the literal words of the statute, but we are convinced it does not state the legislative intent. The statute is a general one, applying to nearly all condemnations in the State, whether by a person or a corporation. See Code, § 36-202. If it is construed to vest in the condemnor only a personal right of use during the life or ownership of the condemnor, the public purposes of condemnation will be ill served. If any part of the right of way of a railroad company, telephone company, or electric power and light or a water company be acquired by condemnation the enterprise would become disrupted by the mere transfer of the property at public or private sale, or by the failure of the company, or by the expiration of the charter. If a natural person be condemnor, his death or his deed would end the interests condemned. The service to the public which justified the condemnation would thus be made limited and precarious. The life expectancy of the person, and the term of charter of a corporation would become factors in valuing what is taken. No such thing has ever been supposed to be the law. Sect. 36-504, which prescribes how the property taken shall be valued, recognizes no such factor in valuing it. The taking is supposed to be perpetual unless limited in the notice on which the proceeding is founded or by the nature of the intended use. When a corporation fails, its easements by condemnation are assets for creditors, the court may sell them with the other property and the business may go on serving the public. We think the true legislative intent is to vest the interest condemned in the condemnor just as though it had been conveyed to him, and in Georgia no mention of heirs or successors or assigns is necessary to convey a complete title. A conveyance to a man is a conveyance to him, his heirs and assigns, and a conveyance to a corporation is one to it and its successors and assigns. Code 85-503. The above quoted clause about the reverter of the condemned use means only to assert that if the use of the condemned property in the business to be served permanently ceases, the property is not to be used for other purposes, but the easement ceases or reverts to the then owners of the servient land. When the business is transferred to another who continues to use the condemned property as before, it may be considered that the condemnor is still using it through his transferee, even though he die, or be dissolved if a corporation. The Tennessee Company has been the ultimate beneficial owner of this easement from the beginning because it owned the condemning corporation. It is still conducting the business to be served by the easement, and the use in that business has not ceased. It would be over-technical to hold that the easement has been lost, and the business must end.

Judgment affirmed.