W. W. Campbell and R. E. Zeigin, both of Toledo, Ohio, for intervening petitioners.

Martin & Corry, of Springfield, Ohio, for receivers of Cincinnati & L. E. R. Co.

NEVIN, District Judge.

Leave of court having been first sought and obtained, intervenors, Herman R. Klauser and (14) others, filed their intervening petition herein on July 27, 1940. They seek to have title, which they claim, to certain real estate quieted and possession thereof restored to them from the receivers herein.

In their petition (after the formal allegations as to the appointment of the receivers in this cause) they allege in substance that they have a legal estate in and are entitled to the possession of the real estate described in the petition; that they acquired title to the property by way of inheritance from their ancestors, and that they are now the owners of the fee; that the predecessor in title to the Cincinnati & Lake Erie Railroad Company acquired an easement in the real estate by condemnation proceedings for the

**PENNSYLVANIA CO. FOR INS. ON LIVES & GRANTING ANNUITIES v. CINCINNATI & L. E. R. CO.**
**Petition of KLAUSER.**

No. 323.

District Court, S. D. Ohio, W. D.

Sept. 22, 1941.

sole and only purpose of operating a railroad over and across the same; that the defendant, Cincinnati & Lake Erie Railroad Company, and the Receivers thereof, have abandoned the premises for any and all the uses for which the same were appropriated by the condemnation proceedings, and thereby they have abandoned the easement therein, and that the title has reverted to the intervenors free from any claims of the railroad company.

Intervenors pray "that this Court declare an abandonment of said premises by said Cincinnati & Lake Erie Railroad Company, for the uses and purposes for which the same was appropriated and that said intervenors' title to said premises be quieted in and to said real estate as against said Cincinnati & Lake Erie Railroad Company; that the possession thereof be restored to your intervenors, and said Cincinnati & Lake Erie Railroad Company be ordered and directed to surrender possession of said premises to these intervenors * * *."

On November 20, 1940, the receivers filed their answer. In the answer all formal allegations as to the incorporation of defendant, Cincinnati and Lake Erie Railroad Company, and as to the receivership are admitted.

It is also admitted that in 1907 the Lima & Toledo Traction Company, an Ohio (railroad) corporation, acquired by condemnation proceedings in the Probate Court of Lucas County, Ohio, certain rights and interests in and to the real estate described in the intervening petition, and that the Ohio Electric Railroad Company, an Ohio corporation, acquired from the Lima & Toledo Traction Company certain rights and interests by way of leasehold, with reference thereto.

The receivers allege that thereafter Cincinnati & Lake Erie Railroad Company acquired all the rights and interests in and to the real estate of both the Lima & Toledo Traction Company, and the Ohio Electric Railroad Company, and that the Cincinnati & Lake Erie Railroad Company is the owner of an indefeasible title in fee simple of and to the premises described in the intervening petition.

The receivers deny that Cincinnati & Lake Erie Railroad Company and its Receivers have abandoned the premises, and their easement and interests therein or that the intervenors are entitled to the cancellation of the easement or to the restoration of the premises, or to the possession thereof. They allege that the intervenors have no right, title, or interest in or to the premises described in the intervening petition, and pray that the intervening petition may be dismissed.

On January 15, 1941, an agreed statement of facts was filed. Subsequently (on April 22, 1941) the cause came on for hearing. At the hearing a number of exhibits were offered and admitted in evidence and the oral testimony of one witness—Mr. Howard Lowe, Chief Engineer of Cincinnati and Lake Erie Railroad Company—introduced. He was not cross-examined. As appears, therefore, there is no dispute as to the basic facts. The exhibits in evidence and the records of this court show the action taken by the receivers, under the authority of the court, in connection with the abandonment of its right of way for railroad purposes by the defendant, Cincinnati and Lake Erie Railroad Company.

Abandonment as a railroad is conceded. As to this, the record (pp. 1836, 1837) shows:

"The Court: * * * Now the road as a railroad has been ordered abandoned.

"Mr. Martin (Of counsel for receivers): That is true."

It is so stipulated, also, in Paragraph 17 of the "Agreed Statement of Facts" (Intervenors Ex. 1—Receivers Ex. A).

The receivers claim, however, that ever since the discontinuance of rail operations they have been negotiating with the City of Toledo, Ohio, for the sale to it of the entire tract involved herein, portions thereof to be incorporated by the City into its public highway system, and that the negotiations have not been completed because of the inability of the City to finance the purchase and improvement of the land. Mr. Lowe testified (Rec. pp. 1839 et seq.) regarding these negotiations.

They also assert that from the time this land was first used for railroad purposes, a part of those purposes had consisted in the transmission of electrical energy by means of the pole line which was used for the operation of the railroad, and that the energy transported was sold at wholesale or retail to municipalities and private users along the right of way as far south as the City of Lima. This transmission of electrical energy, independently of the operation of the Railroad, they submit, was a normal use of the property, and testimony

(of Mr. Lowe) was introduced in order to show that this land might be sold for purposes of transmission of electrical energy, in view of the fact that this was one of the uses to which it had been devoted. This, the receivers say, would also be a public or quasi public use.

In addition, the receivers claim that certain private interests have offered to purchase the land though they concede (Br. P. 3) that "if the Railroad owned only an easement, it could not sell the land for private purposes, but could only sell it for some public or quasi public use."

At the outset of the hearing counsel for the receivers (Mr. Martin) made the following statement (Rec. pp. 1835, 1836) as to the questions presented: "The issues which are raised are two. The first is whether the railroad has the fee ownership in the land by virtue of the deed from Klauser and Hager to Wiltsie Realty Company and then from Wiltsie Realty Company to the railroad. That is one issue, and the primary issue in so far as the receivers are concerned. The second issue is, even admitting that the railroad does not own the fee by virtue of those conveyances but owned simply an easement or right-of-way, the issue is whether there is any power in the railroad or its receivers to convey that right-of-way for any other use than a strictly railroad use. * * * The receivers take the position that this real estate, this right-of-way, is a potential or is an actual asset of the receivership estate, and that it can be conveyed by the receivers for purposes within the scope of the original grant so that the original easement will not be lost or abandoned or destroyed or extinguished."

Mr. Campbell (Counsel for petitioners) stated (Rec. P. 1845): "This intervening petition is based on the fact that the railroad company has ceased operation and abandoned the object and purposes for which the land was condemned, and that therefore the easement is terminated and that therefore the property is that of the intervenors, free from the condemnation easement."

At the conclusion of the introduction of all the evidence, oral arguments were presented and thereafter briefs, with many authorities therein cited, quoted from, and distinguished according to the views of respective counsel, were filed. These the court has considered.

It would not seem to serve any useful purpose, however, to here discuss the authorities referred to and relied upon, nor to set forth the facts other or further than is done in the Findings of Fact made a part hereof. As stated by the court in Penmac Corporation v. Esterbrook Steel Pen Mfg. Co., D.C., 27 F.Supp. 86, at page 87, "it is now a work of supererogation to write a considered and detailed opinion on the facts in what used to be an equity cause and is now called a non-jury cause, for the place of the opinion must now be taken by formal findings of fact and conclusions of law, separately stated and numbered. Title 28 United States Code, Section 723, 28 U.S. C.A. § 723."

Upon a consideration of the whole of the record, the briefs and arguments of counsel and the applicable law, the court has arrived at the following:

### Findings of Fact.

1. On January 28, 1932, in Case No. 323 in Equity on the docket of the United States District Court for the Southern District of Ohio, Western Division (at Dayton), entitled, "The Pennsylvania Company, etc., Plaintiff, and Cincinnati & Lake Erie Railroad Company, etc., Defendant.", this court appointed receivers for all of the property and assets of Cincinnati & Lake Erie Railroad Company (operating an interurban electric line). Thomas Conway, Jr., and John C. Durfey are now the duly appointed, qualified, and acting Receivers under the orders of the court, and as such Receivers, are in full and complete possession and control of all of the assets of the Cincinnati & Lake Erie Railroad Company, and are in possession of the premises described in the intervening petition herein, and the premises described in Finding of Fact No. 12 hereof.

2. On November 8, 1937, the Court entered an order upon application of the Receivers authorizing the abandonment of and discontinuance of service over that portion of the interurban electric line extending from Springfield, Ohio to Toledo, Ohio (Intervenors' Exhibit No. 2).

3. Thereafter, the Court upon application of the Receivers, authorized and directed the sale of certain personal property located upon the real estate between Springfield, Ohio, and Toledo, Ohio.

4. Subsequently, upon application of the Receivers, the Court authorized and direct-

ed the sale of certain portions of the right-of-way formerly used in the operation of the interurban electric rail line, both on the Springfield-Toledo Division, and elsewhere.

5. On or about the 19th day of November, 1937, and pursuant to the orders of this (United States District) Court, the Receivers discontinued operations of the electric interurban railroad line which extended over the premises described in Finding of Fact No. 12 hereof, and since November 19, 1937, no cars or trains of any kind or character have been operating over or upon the premises described in Finding of Fact No. 12, nor have any passengers, express, U. S. mail, baggage, or freight been carried or transported over, along or upon the same, except such cars and equipment as were operated over said premises by certain contractors in connection with the work of salvaging the track, ties, poles, wires, etc. All tracks, switches, side-tracks, poles, wires, and other appliances for the transportation of passengers, express, U. S. mail, baggage and freight have been removed from said premises.

6. The Receivers herein are not now engaged in the operation of interurban electric trains over any portion of the former Cincinnati & Lake Erie Railroad system. The public transportation service formerly conducted by Cincinnati & Lake Erie Railroad Company, and subsequently by its Receivers, is now being operated by means of motor buses by Cincinnati & Lake Erie Transportation Company, and by means of electric cars by Dayton & Suburban Railway Company, both of which are owned by said Receivers, and the routes thereof are either identical with, or substantially parallel to the routes formerly operated by Cincinnati & Lake Erie Railroad Company.

7. The real estate involved in this intervention proceeding lies in the southerly part of the City of Toledo, Ohio, immediately south of Glendale Avenue, and is a strip about 85 feet wide and 1,300 feet long.

8. From the date of discontinuance of rail operation up to the present time, the Receivers and their agents have been engaged in continuous negotiations with the City of Toledo for the sale to it of the entire tract involved in this proceeding, portions thereof to be used by the City, if desired, for public highway purposes. Negotiations have not been completed, because of the inability of the City to finance the purchase and improvement of the land.

9. From the time of the original condemnation proceedings in 1907 (later referred to) until some months after the rail service was discontinued, the Railroad Company and its predecessors in interest used this land for the transmission of electrical energy for the purpose of wholesale and retail sale to municipal corporations and consumers along the route. The transmission of such energy was in addition to the requirements for the operation of the railroad, but was by means of the same appliances. No question with reference thereto was ever raised.

10. The property is physically suitable for use in connection with the transmission of electrical energy. It is also suitable for public highway and transportation purposes.

11. In the year 1907 Louise Brand Klauser was the owner of an undivided one-half interest, and Frances A. Hager, Eloise Hager, Esther Hager, and Elizabeth Hager were the owners of the other undivided one-half interest in and to the following described real estate:

"Situate in the City of Toledo, County of Lucas, and State of Ohio, and bounded and described as follows:

"The east 18.60 acres of the southeast quarter of the southwest quarter of Section 16, Town 3 of the U.S. Reserve of 12 miles square at the foot of the rapids of the Miami of Lake Erie in Lucas County, Ohio;

"Also the 3.227 acres of that part of the south one-half of the west one-half of the southeast quarter of Section 16, Town 3 of the U.S. Reserve of 12 miles square, and lying northwesterly of Miami and Erie Canal, containing 21.827 acres."

12. On or about the 13th day of December, 1907, by virtue of and pursuant to proceedings in condemnation instituted in the Probate Court of Lucas County, Ohio, under Miscellaneous No. 3531 in a certain cause entitled, "The Lima & Toledo Traction Company v. Eliza Glanzman et al." (to which the persons named in Finding of Fact No. 11 [above] were parties), and upon payment by said railroad company of a verdict in the amount of $1,909.25 to the above described parties, the said Lima & Toledo Traction Company, a corporation organized and existing as a railroad under the laws of Ohio, acquired certain rights in, to, and over the following described premises:

"Situate in the City of Toledo, County of Lucas, and State of Ohio, and bounded and described as follows:

"Beginning at a point in the west line of the lands of said defendants last named (Louise Klauser, et al.) 277 feet north 1 deg. 12′ east of its intersection with the south line of Section 16; thence north 47 deg. 38′ East 1502.1 feet to the center of Glendale Avenue; thence north 88 deg. 22′ West 115.2 feet; thence south 47 deg. 38′ West 1346 feet; thence south 1 deg. 12′ West 108.5 feet to the place of beginning containing 2.61 acres, and located in the southeast quarter of the southwest quarter of Section 16, Town 3, U.S. Reserve, Adams Township, Lucas County, Ohio."

The petition in said condemnation proceeding recited in part as follows:

"The plaintiff, The Lima and Toledo Traction Company, says that it is a corporation duly organized under and in pursuance to the laws of the State of Ohio, and by the terms of its Articles of Incorporation is empowered to locate, construct, maintain and operate a line of interurban railroad with single or double tracks, with all necessary and connecting switches, side-tracks, poles, wires and other appliances for the transportation of passengers, express, United States Mail, baggage and freight, to be operated by electricity or some motive power other than steam or animal, and extending from the City of Lima, Ohio, northeasterly through the Counties of Allen, Putnam, Henry, Wood and Lucas, to the City of Toledo, Ohio, and upon such private property as the said corporation may acquire, with the right to appropriate all such property as it is unable to obtain by purchase from the respective owners thereof. * * *

"Plaintiff says that it is now engaged in the construction of its line of railroad between the City of Lima, Ohio, and the City of Toledo, Ohio, and that it is necessary in order to carry out the said objects and purposes of its incorporation, and to avoid difficult and dangerous curves, that the plaintiff appropriate, and it intends to appropriate as a part of its said right of way for the construction and operation of its said line of railroad, and for the purpose of constructing, maintaining and operating thereon its railroad, with all necessary appurtenances thereunto belonging, in the erection of its poles and other necessary construction thereon, the above several described tracts of land, and belonging to the persons above named.

"Plaintiff says that it is unable to agree with the said defendants, or either of them, owners respectively of the above described lands as above set forth, as to the compensation to be paid, and therefore asks that such steps may be taken as are authorized by law whereby the plaintiff may be able to appropriate the above described real estate for the uses and purposes above stated.

"Wherefore, the plaintiff asks that such steps may be taken as are authorized by law whereby plaintiff will be enabled to appropriate the above described real estate for the uses, objects and purposes above stated, and for such other and further relief as the nature of the case require."

The judgment and decree of said Court, as embodied in the Journal Entry thereof, provided that upon payment of the verdict and costs, the Lima & Toledo Traction Company "shall be entitled to take possession of all property, rights, and interests of the defendants and each of them appropriated in this cause, as set forth in the petition herein, for the uses and purposes therein set forth, and said plaintiff shall thereupon have the right to enter upon, and hold the property, rights, and interests appropriated by it in this action for the uses and purposes for which the appropriation herein is sought, and that upon the payment or deposit of said amount of said verdicts and costs in the manner and within the time required by law, an order from this court may issue to the sheriff of Lucas County, Ohio, to place said The Lima & Toledo Traction Company in possession of the property so appropriated."

The defendants named in said condemnation proceeding (as to the lands in question in the instant case) were the intervenors herein and/or their ancestors under which said intervenors claim title herein.

13. The amount of said verdict and costs was duly paid, and the Lima & Toledo Traction Company entered in possession of the premises described in Finding of Fact No. 12 hereof and in said petition, fenced the same, and it and its successors in interest have held continuous, notorious, adverse, and open possession thereof since that time (except to the extent hereinafter set forth).

14. The Lima & Toledo Traction Company was an Ohio corporation which

operated a line of interurban electric railway between Lima, Ohio and Toledo, Ohio, and in the course of the operation and continuance of its business, placed certain rails, ties, and poles upon the premises described in Finding of Fact No. 12, and operated its line of interurban electric railroad thereover.

15. Thereafter, certain rights and interests of the Lima & Toledo Traction Company were acquired and held by The Ohio Electric Railway Company, an Ohio corporation, which was organized for the purpose of operating as a railroad company, under and pursuant to a certain agreement of lease executed by and between said companies.

16. By deed of general warranty, dated October 28, 1912, received for record January 24, 1913, and recorded in Volume 392, Page 126, Deed Records of Lucas County, Ohio, Louise Brand Klauser (formerly Louise Brand) conveyed to The Wiltsie Realty Company, an Ohio Corporation, the following described real estate:

"Situate in the City of Toledo, County of Lucas, and State of Ohio.

"The undivided one-half of the east 18.60 acres of the southeast quarter of the southwest quarter of Section 16, Township 3, in the U. S. Reserve of 12 miles square at the foot of the rapids of the Miami of Lake Erie; also that part of the southwest quarter of the southeast quarter of said Section 16, which lies northwesterly of the Miami and Erie Canal, all being situated in Adams Township, Lucas County, Ohio; but excepting from the above described premises that part thereof procured by The Ohio Electric Railway Company by condemnation proceedings in the Probate Court of Lucas County, Ohio," the premises herein conveyed containing nineteen and 14/100 acres more or less.

17. By general warranty deed dated November 8, 1912, received for record January 24, 1913, and recorded in Volume 392, Page 125, Deed Records of Lucas County, Ohio, Frances A. Hager and Eloise Hager, conveyed to the Wiltsie Realty Company the undivided one-fourth of the premises described in Finding of Fact No. 16 hereof. Said deed reciting: "but excepting from the above described premises, that part thereof procured by The Ohio Electric Railway Company by condemnation proceedings in the Probate Court of Lucas County, Ohio."

18. By guardian's deed dated January 3, 1913, received for record January 24. 1913, and recorded in Volume 388, Page 538 of the Deed Records of Lucas County, Ohio, Samuel Kohn, guardian of Esther Hager and Elizabeth Hager, minors, conveyed to the Wiltsie Realty Company an undivided two-eighths interest in the following described property:

"Situate in the City of Toledo, in the County of Lucas, and State of Ohio.

"The east eighteen and sixty one hundredths (18.60) acres of the southeast quarter (¼) of the southwest quarter (¼) of Section Sixteen (16), Town three (3) of the U. S. Reserve of twelve (12) miles square; also that part of the south half of the west half of the southeast quarter of said Section sixteen (16) lying northwesterly of the Miami and Erie Canal, containing three and two hundred twenty-seven hundredths (3.227) acres of land more or less, said lands are situated in Lucas County, Ohio, except so much of said land acquired by The Ohio Electric Railroad Company in condemnation proceedings."

19. The reference to the Ohio Electric Railroad Company in Findings of Fact Nos. 16, 17 and 18 hereof was an error. The parties to said conveyances intended to refer to the Lima & Toledo Traction Company, instead of the Ohio Electric Railroad Company. By order and decree of the Common Pleas Court of Lucas County, Ohio, entered on August 2, 1940, in cause Number 157010, entitled "Herman R. Klauser et al., Plaintiffs, v. Cincinnati & Lake Erie Railroad Company et al., Defendants"; and wherein the Wiltsie Realty Company was also a defendant, the said Common Pleas Court ordered and decreed that each of the deeds referred to in Findings of Fact Nos. 16, 17 and 18 (above) should be reformed so that the name "The Lima & Toledo Traction Company" should be substituted for the name "The Ohio Electric Railroad Company" in each of said deeds.

The said court in said cause also adjudged and decreed that "the court further finds from the petition and the evidence adduced, that the said The Wiltsie Realty Company has no right, title or interest in the real estate described in the petition;" the premises described in said petition being and including the premises claimed by the intervenors herein.

20. On the 14th day of March, 1913, there was filed for record in the office of

the Recorder of Lucas County, Ohio, and recorded in Volume 23, Page 43 of the Plat Records of said County, a "Plat of Wildwood", being a Subdivision in Adams Township, Lucas County, Ohio. Said Plat and Subdivision described all of the premises described in Finding of Fact No. 11 hereof. Said Plat was executed by the Wiltsie Realty Company, the Lima & Toledo Traction Company, and the Ohio Electric Railroad Company, and contains the following recital: "It is agreed that The Lima & Toledo Traction Company and The Ohio Electric Railroad Company, are the owners of the land now used by the last named company for railroad purposes, and that the same is included within the fences bounding the same, and defined by the monument and measurements indicated on the Plat and briefly described as lots number 189 and 190 on this Plat." The lots shown on said Plat are numbered one to 190 inclusive. It is agreed (Par. 10, Intervenors' Ex. 1—Receivers' Ex. A) that the first full paragraph on page 2 of the petition of intervention herein, which recites: "said property is also described as lot 189 in Wildwood", is to be corrected to correspond with the facts set forth in this Finding of Fact (No. 20).

21. By quit claim deed dated March 8, 1913, received for record March 22, 1913, and recorded in Volume 393, page 208, Deed Records, Lucas County, Ohio, the Wiltsie Realty Company bargained, sold and quit claimed to the Ohio Electric Railroad Company, its heirs and assigns forever, the following described real estate: "Lots 189 and 190 in Wildwood Subdivision in Adams Township, Lucas County, Ohio. According to the Plat thereof, recorded in the Recorder's Office, Lucas County, Ohio. Said premises above described being the premises used as a right of way by The Ohio Electric Railroad Company; together with all the privileges and appurtenances to the same belonging, to have and to hold the same to the said grantee, its successors and assigns forever, hereby covenanting that the title conveyed is clear, free and unincumbered by any act of the grantor herein." (Said lots 189 and 190 are a portion of the premises claimed by intervenors herein.)

22. By quit claim Deed dated March 15, 1913, received for record March 22, 1913, and recorded in Volume 390, Page 577, of the Deed records of Lucas County, Ohio, the Lima & Toledo Traction Company and the Ohio Electric Railway Company conveyed to the Wiltsie Realty Company the following real estate: "Lots 63 to 90 both inclusive; lots 142 to 179 both inclusive, all in Wildwood, a subdivision in Adams Township, Lucas County, Ohio, together with all the privileges and appurtenances to the same belonging."

23. Lots 63 to 90 adjoin lot 190 on the North side thereof; lots 142 to 163 inclusive, adjoin lot 189 on the North side thereof; lots 164 to 175 inclusive adjoin lot 189 on the South side thereof.

24. The intervenors herein, namely, Herman R. Klauser, Herman R. Klauser, Jr., Francis H. Klauser, Franciska Klauser Cross, Horace Cross, Esther Egger, Albert K. Egger, Elizabeth Christen, Arthur W. Christen, Jeanne Imholt, Eugene Imholt, Patricia Vogel, a minor, by her guardian, Arthur W. Christen, Virginia Vogel, Eloise H. Joyce, and James G. Joyce, are all of the heirs at law of the persons named in Finding of Fact No. 11 hereof, and as such heirs at law, are the successors in title to any right or interest of the persons named in Finding of Fact No. 11, to the real estate described in the intervening petition herein.

25. Subsequent to the conveyance set forth in Finding of Fact No. 22 hereof, the rights and interests of the Ohio Electric Railroad Company to any of the real estate described in the agreed statement (Intervenors' Ex. 1—Receivers' Ex. A) were conveyed to the Lima & Toledo Traction Company, and thereafter, all the rights and interests of the Lima & Toledo Traction Company to any of the real estate described in the agreed statement were acquired, and are now owned by Cincinnati & Lake Erie Railroad Company, an Ohio corporation organized as a railroad company under the laws of the State of Ohio, and formerly engaged in the operation of a line of interurban railroad between Cincinnati, Dayton, Springfield, and Toledo, Ohio, and other points. The line of the railroad operated by Cincinnati & Lake Erie Railroad Company included that part of the line previously operated by the Lima & Toledo Traction Company and the Ohio Electric Railroad Company described in the agreed statement.

26. The Wiltsie Realty Company is no longer engaged in business. Its Articles of Incorporation have been cancelled by the Tax Commission of Ohio, for failure to pay franchise tax.

12

### Conclusions of Law.

1. In the deeds to the Wiltsie Realty Company, described in Findings of Fact Nos. 16, 17 and 18 herein, the grantors specifically excepted from the grant therein the part thereof named in the condemnation proceedings of the Lima & Toledo Traction Company, and the grantors retained in themselves, and did not convey to the Wiltsie Realty Company, that portion of the premises.

2. The intervenors herein are the owners in fee simple of the premises claimed by them in this action.

3. The premises in question, to-wit: the right-of-way, condemned by the Lima & Toledo Traction Company in the condemnation proceedings in the Probate Court of Lucas County, Ohio, and thereafter acquired by the defendant, Cincinnati & Lake Erie Railroad Company, have been permanently abandoned by Cincinnati & Lake Erie Railroad Company, and the receivers thereof, for the uses and purposes for which the same were condemned, and the title thereof is now in the intervenors free and clear of any and all rights and claims of defendant, Cincinnati & Lake Erie Railroad Company and/or the receivers thereof.

The prayer of the petition of the intervenors herein should be, and the same is, granted and the receivers are instructed to surrender possession of said premises to the intervenors. The title of intervenors herein to said premises is quieted in and to said real estate.

Counsel may prepare and submit a decree accordingly.