CHESTER HENNICK and ADAH HENNICK, Plaintiffs-Respondents, v. THE KANSAS CITY SOUTHERN RAILWAY COMPANY, a Corporation, Defendant-Appellant, No. 43899—269 S. W. (2d) 646.

Division One, May 10, 1954.
Motion for Rehearing Overruled and Opinion Modified on Court's Own Motion, July 12, 1954.

*Jos. R. Brown, C. H. Rimann, Bond & Bond, Johnson & Johnson* and *Ray E. Watson* for appellant.

*Ruark & Ruark* for respondents.

 COIL, C.—Respondents (called plaintiffs herein) brought an action to quiet title to a 40-foot strip of land which had been the south half of the 80-foot right-of-way of Missouri & Arkansas Railway Company (called M. & A. herein). Appellant (called defendant herein) contends it received an easement in the 80-foot strip for railroad purposes by a conveyance, executed June 21, 1950, from the stockholders' trustees of the dissolved M. & A. The trial court adjudged title in plaintiffs free of any easement for railroad purposes.

The M. & A., prior to September 6, 1946, operated a railroad from Joplin, Missouri, to Helena, Arkansas; it used portions of the tracks of other railroads and used its own tracks between Neosho and Wayne, Missouri, and between Seligman, Missouri, and Helena, Arkansas. The particular segment of railroad here involved is that portion near or in Neosho beginning at a place a short distance southeast of McKinney Street and extending northwestwardly to the place where the M. & A. track joins defendant's tracks in Neosho, a total distance of approximately one mile. More specifically, we are concerned with that portion of the former M. & A. right-of-way which abuts plaintiffs' land on the northeast.

The essential facts are stipulated or undisputed. There are two issues: whether plaintiffs have any title to the 40-foot strip, and, if so, whether the M. & A. stockholders' trustees conveyed to defendant an easement to use the 80-foot right-of-way by their June 21, 1950, deed.

 On September 2, 1920, the owner of the land (subject to M. & A.'s easement) known and referred to hereinafter as the "Clem Hawkins tract", across which the right-of-way ran, conveyed to Clem Hawkins. In November 1940, Clem Hawkins' heirs conveyed to two of such heirs, and thereafter those two heirs conveyed to plaintiffs, the part of the "Clem Hawkins tract" abutting the right-of-way on the southeast. The last two deeds described the land as: "That part of the 'Clem Hawkins tract' consisting of approximately two and one-half acres, more or less, which lies south (and slightly west) of the right-of-way of the Missouri and North Arkansas Railroad, the 'Clem Hawkins tract' from which the above land is cut off and conveyed is described as follows: * * * " Then follows a description by metes and bounds of the "Clem Hawkins tract."

Defendant contends that the deed to plaintiffs conveyed no title to any part of the railroad right-of-way. Defendant agrees that Missouri is committed to the view that, in the absence of evidence to the contra-

ry, the title to the fee (subject to the easement) in a railroad right-of-way is presumed to be in the abutting owners and the title of each extends to the center of the way. Brown v. Weare, 348 Mo. 135, 143[7], 152 S. W. 2d 649, 654[14,15]. But, defendant says, "The real question here is where parties own land on both sides of the right-of-way and later 'cut off' and convey a small tract south of the right-of-way to two of the owners of the whole tract, was there an intention to convey to the center of the right-of-way."

In other words, defendant argues that the deeds to plaintiffs' immediate predecessor in title and to plaintiffs contained language which rebutted the presumption that plaintiffs' title as abutting owners extended to the center of the right-of-way subject to the M. & A.'s easement. Defendant points to the language describing the land conveyed as that part of the "Clem Hawkins tract" which lies southwest of the M. & A. right-of-way and "the 'Clem Hawkins tract' from which the above land is *cut off* and conveyed is described as follows: * * *." (Italics ours.) Defendant says this language shows that the heirs of Clem Hawkins, when they conveyed to plaintiffs' immediate predecessor in title, intended to retain title to the entire 80-foot right-of-way. We do not agree. The language of the deed referring to the particular portion of the Clem Hawkins tract cut off and conveyed are words of description and not words of reservation or exception. We find nothing in the conveyance from all the heirs of Clem Hawkins (who owned the entire tract, both north and south of and including the entire right-of-way) to two of those heirs, indicating an intention to reserve in the grantors (all of the heirs) the entire right-of-way subject to the railroad's easement. There certainly was neither an express reservation of any rights to the strip nor any evidence adduced or circumstances shown sufficient to indicate an intention to reserve the strip to the grantors. Under the circumstances, the presumption obtains and the deed conveyed title to the center of the right-of-way subject to the easement. Brodrick v. Tyer, 239 Mo. App. 118, 121-123, 187 S.W. 2d 476, 477, 478[4, 5].

 It is necessary to make a detailed statement of facts which bear upon plaintiffs' claim that the railroad's easement was abandoned.

In 1908 the Missouri and North Arkansas Railway Company (called M. & N. A. herein) condemned an 80-foot right-of-way over the land in question and, on April 15, 1935, conveyed its rights to M. & A.

In July 1946, the stockholders authorized M. & A.'s directors to file an application with the Interstate Commerce Commission for authority to abandon all corporate operations and the entire line of railroad.

On September 6 and 11, 1946, M. & A. employees went out on strike. All operations of the railroad were thereafter discontinued. A watchman cared for the corporate assets.

The application to the I.C.C. was filed September 23, 1946.

On February 14, 1947, the U.S. District Court, W.D. Ark., pursuant to a stockholders' application, appointed receivers to take charge of the assets and to preserve them until the further order of the court. On February 24, 1947, the receivers were substituted in the I.C.C. application.

On August 9, 1948, the I.C.C. made its findings and order permitting abandonment of the entire line, effective 60 days thereafter, *"Provided, however,* and this certificate is issued subject to the condition, that the receivers of the Missouri and Arkansas Railway Company sell the line or any portion thereof, including such tracks and other facilities and property of said company as may be essential to the continued operation of such line or portion thereof, to any responsible person, firm, or corporation offering, within 60 days from the date hereof, to purchase the same for continued operation and willing to pay not less than the net salvage value of the property which they may seek to acquire." On October 8, 1948, the effective date of the certificate was extended to December 7, 1948.

On October 18, 1948, the Helena and Northwest Railway Company applied to the I.C.C. for a certificate authorizing the acquisition and operation of a portion of the former M. & A.

In December 1948, a motion by the State of Arkansas, which had theretofore been filed for annulment of the certificate, was dismissed and the final effective date of the certificate permitting abandonment was extended to April 6, 1949.

On March 14, 1949, the Arkansas and Ozarks Railway Corporation applied (application amended April 11, 1949) to the I.C.C. for authority to acquire and operate portions of the line of the former M. & A.

On April 21, 1949, the M. & A. receivers filed their final report in the district court, reciting that the certificate of abandonment had become final on April 6, 1949, and asked their discharge; and on April 22, 1949, their report was approved and they were discharged.

In June 1949, the I.C.C. issued its certificate authorizing the Helena and N. W. Ry. Company to acquire and operate a portion of the line of the former M. & A.

In August 1949, the stockholders of the M. & A. (the corporation had by then been dissolved) appointed two of their number trustees to sell and dispose of the remaining assets.

In January 1950, the I.C.C. issued a certificate of authority to the Arkansas & Ozarks Ry. Corporation to acquire and operate portions of the former line of the M. & A.

On June 21, 1950, the trustees conveyed to defendant by warranty deed certain parcels of land north and west of the land here involved and close to the point where the M. & A. track joined defendant's line, including the depot grounds, switches, and **[650]** some single trackage. And on the same day, the trustees conveyed to defendant by quitclaim deed other parcels of land including the strip in ques-

tion, wherein all the right, title and interest of the trustees were conveyed to defendant. The consideration recited in each of the two deeds was $1.00 and other good and valuable consideration. The testimony was that defendant paid between $20,000 and $21,000 for the land conveyed by both deeds. There was no evidence as to what portion of the total consideration was paid for the land conveyed by the quitclaim deed or for the specific tract here involved.

Plaintiff's evidence showed that, for some time prior to trial, the rails of the former M. & A. had been removed between Wayne and a point a short distance south of McKinney Street in Neosho; that the portion of the track on the instant tract and for some distance northwest thereof was overgrown with brush except in places where abutting owners had cleared the right-of-way; that the rails at street crossings were covered with the dirt and gravel of the cross streets; that certain trestles and cross ties were in disrepair. And, as heretofore indicated, no trains had been operated over the track on the instant tract after September 6, 1946. From time to time until August 1950, a motorcar traversed the track for preservation purposes.

Defendant purchased the right-of-way in question and the track thereon to form a track connecting with their main line (at Neosho) into Joplin. Defendant intended to serve by this track existing industries (located close to the junction of the tracks) and to serve possible future industries which might so locate that they could be served by such track. No actual use had been made nor was any immediately contemplated of the track traversing plaintiffs' land.

It is plaintiffs' contention that, prior to the conveyance by the M. & A.'s former stockholders' trustees (hereinafter called trustees) to defendant, the M. & A. and its receivers had completely abandoned the involved portion of the right-of-way and thereby had been divested of the easement to thereafter use the land for railroad purposes. If plaintiffs are correct in that contention, then, of course, they are also correct in their further contention that defendant received no right to use the tract for those purposes by the June 21, 1950, conveyance. Kelley v. Waymeyer, 356 Mo. 1043, 1046[2], 204 S.W. 2d 744, 745[3, 4].

An easement may be extinguished by abandonment. American Law of Property, Vol. II, § 8.96, p. 302; Powell on Real Property, Vol. 3, § 423, p. 493; St. Louis-San Francisco R. Co. v. Dillard, 328 Mo. 1154, 1162, 43 S.W. 2d 1034, 1038[12]. Whether there has been an abandonment is a question of fact. 17 Am. Jur., Easements, § 142, p. 1026. An abandonment is proved by evidence of an intention to abandon as well as of the act by which that intention is put into effect; there must be a relinquishment of possession with intent to terminate the easement. Hatton v. Kansas City C. & S. R. Co., 253 Mo. 660, 676, 162 S.W. 227, 232.

While an intention to abandon may be inferred from circumstances strong enough to warrant that inference, an abandonment must be proved by clear and convincing evidence. St. Louis-San Francisco R. Co. v. Dillard, supra, 43 S.W. 2d 1038[12] [13].

We consider then whether the evidence shows an abandonment of the portion of the right-of-way involved prior to or at the time of the trustees' conveyance to defendant.

Plaintiffs particularly stress M. & A.'s application to the I.C.C., and the statement therein that the application was for permission to abandon all of its operations and its entire line of railroad. We think, however, that plaintiffs have placed an erroneous interpretation upon the action of the M. & A. stockholders and directors, and upon the contents of the application. Plaintiffs have treated those actions and statements as though the stockholders' vote, directing the directors to file the application for permission to abandon, the filing of that application, and the action thereon by the I. C. C., conclusively proved an intention to abandon the right-of-way as well as the act relinquishing it. But, while the application to the I. C. C. was for permission to abandon all operations and the entire line of railroad, the conclusion does not follow that there was an intention to abandon, or that the act of filing the application was the act of relinquishing, any right-of-way easement which could be disposed of for legitimate railroad purposes. We do not construe the application to the I. C. C. to cease operation and the certificate of the I. C. C. permitting abandonment, issued conditionally upon the receivers of the M. & A. selling the line or any portion thereof, as convincing proof that the receivers intended to abandon or that they thereby relinquished any portion of the M. & A. right-of-way which they could dispose of by sale for legitimate railroad purposes.

It is true that the effective date of the I. C. C. certificate, giving the receivers permission to abandon the railroad subject to the conditions set forth, was April 6, 1949; and that the trustees' deed to defendant was not executed until June 21, 1950. However, in the interim between the issuance of the certificate and its effective date, the receivers apparently had negotiated with the Helena and N. W. Ry. Company and with the Arkansas and Ozarks Ry. Company for the sale of portions of the line. Applications by those railroads for permission to acquire and operate portions of the former M. & A. were filed prior to, but the certificates were issued subsequent to, the effective date of the order permitting abandonment. Further, there was testimony that defendant was negotiating for the portion of the M. & A. railroad here in question prior to the effective date of the order permitting abandonment. But, irrespective of this, there is no dispute that the actual track of the M. & A. on the portion of the railroad purchased by defendant was left in place and was in place at trial time; a circumstance indicating that there was no intention on

behalf of the owners of the former M. & A. to abandon the involved portion of the right-of-way prior to sale.

It is also true that the railroad was not operated after September 6, 1946, and that the sale to defendant was not until June 21, 1950. But nonuser alone is not sufficient to prove abandonment although it may be evidence indicative of an intention to abandon. Rest. Property, Vol. 5, § 504(d), p. 3079. When it is recalled that from September 1946, through April 6, 1949, the M. & A. receivers were engaged in attempting to obtain permission to abandon the railroad, and that on August 12, 1949, the stockholders of the dissolved M. & A. appointed trustees to sell the remaining M. & A. assets, and that the sale to defendant of the instant easement was consummated in June 1950, there appears no such nonuser as would justify the conclusion that the right-of-way had been abandoned.

We hold that the evidence considered in its entirety does not prove either an intention to abandon, or any acts of relinquishment of the instant right-of-way.

But plaintiffs contend further that an abandonment was, nevertheless, shown "by an attempt to convey to another railroad to operate over the right-of-way for purposes not contemplated at the time of its acquisition by eminent domain. * * * The attempted shift of use from the operation of a through railroad line to that of a short track for the purpose of locating factories 'to help build up the community' is an entire change of burden to which the land could not be subjected except (if at all) by the exercise of eminent domain specifying such purpose and permitting ascertainment of damages on that basis."

Preliminary to consideration of this contention, we point out that the fact, alone, that a portion of the right-of-way was sold to another railroad did not extinguish the easement to use the land for purposes for which it was condemned. For it is well settled that an easement may be conveyed as an interest in land. Florida Blue Ridge Corp. v. Tennessee Electric P. Co. (5 Cir.), 106 F. 2d 913, 915[9-14]; 30 C. J. S., Eminent Domain, § 454, p. 215; Powell on Real Property, Vol. 3, § 419, p. 477. Nor is either the fact that there was no showing (and apparently the contrary is true) that defendant had obtained a certificate, pursuant to 49 U. S. C. A., § 1, ¶¶ 18-20, to purchase and operate that portion of the former M. & A. which it purchased, or whether such was necessary (under paragraph 22 making it unnecessary to apply to the I. C. C. for authority to construct a spur or side track), of importance in this case. This, for the reason that sale of the easement, even if not authorized by the I. C. C., would not destroy the easement. Florida Blue Ridge Corp. v. Tennessee Electric P. Co., supra, 106 F. 2d 915[4-8].

In our view, M. & A. owned an easement across the land in question. Upon dissolution of M. & A., this easement belonged to the

creditors or stockholders and could be sold by the trustees unless the easement had been divested or extinguished prior to, or was extinguished by, the conveyance.

Determination of plaintiffs' last mentioned contention requires consideration of the uses and purposes for which the property was condemned, i.e., the nature and extent of the M. & A. easement. The petition in the condemnation proceedings is not before us. The pleadings, other than the petition, indicate that the land in question was appropriated pursuant to a petition which sought to condemn land (apparently in accordance with the charter of the condemnor) to operate a railroad across Newton and Barry Counties. Probably the petition set forth the points between which condemnor's charter authorized the construction and operation of the proposed railroad. The pertinent portion of the condemnation judgment was that condemnor, "its successors and assigns, be invested with the right to hold, to use and to enjoy for the uses and purposes of a right of way, which right of way is 80 feet wide, for its said railroad the strip of land below described." It is true that the condemnor's right to condemn was shown by evidence that it intended to build and operate the railroad authorized by its charter. And in a sense, as plaintiffs contend, the land was originally condemned in order that M. & A.'s predecessor might operate a standard gauge steam railway (between the points probably specified in the petition) and across Newton and Barry Counties. As we view the matter, however, it does not follow that the condemnation judgment restricted the use which could thereafter be made of the right-of-way by the condemnor (after the railroad had been constructed in accordance with the charter authority of the condemnor) solely to the operation of a certain type of railroad between certain points in certain counties. While it was necessary for the condemnor to prove in the original condemnation proceeding that it was condemning the land for the particular railroad called for in its charter (see K.C. Interurban R. v. Davis, 197 Mo. 669, 95 S.W. 881), this, in our opinion, did not limit the uses which could be made of the right-of-way to the operation of a "through" railroad between specified points.

We are unable to construe the effect of the condemnation judgment so narrowly. Rather, we construe the easement originally obtained as one authorizing the use of the land in question for railroad right-of-way purposes, that is, for the purpose of operating a railroad over that particular land, and for any legitimate railroad purpose incidental to the use of that land for operating trains over it. Rombauer v. St. Louis-San Francisco R. Co., 225 Mo. App. 78, 82, 34 S.W. 2d 155, 156[1]. In our view, so long as the instant right-of-way continues to be used for legitimate right-of-way purposes in connection with the operation of a railroad, the easement continues. All that plaintiffs may insist upon is that their land continue to be used for

legitimate railroad right-of-way purposes. Plaintiffs' predecessors in title were presumably fully paid for this right-of-way. And, while it is true that there may be a difference in benefits to plaintiffs' land resulting from the operation of a through ▉▉▉ railroad running over the land as opposed to the use of the land for industrial track purposes, nevertheless, we think it must be held to have been within the contemplation of the parties when the tract was condemned that the essential use to be made of the land was for railroad right-of-way purposes. 44 Am. Jur., Railroads, § 126, p. 338.

The use of plaintiffs' land being made by defendant is for a legitimate railroad right-of-way purpose in connection with the operation of defendant's railroad, i.e., an industrial track. The facts, that the track had not been used to its full length (and not at all over plaintiffs' land) at trial time, or that repairs are necessary before it may be so used, or that defendant intends to hold the track for future legitimate railroad use, are, in our view, not controlling. This, for the reason that a railroad may, and must of necessity, plan for the future. St. Louis-San Francisco R. Co. v. Dillard, supra, 43 S.W. 2d 1037[10]. So long as defendant continues to hold and use the right-of-way for legitimate railroad purposes in connection with the operation of its railroad, plaintiffs may not complain. The uses and purposes for which the easement was sold to defendant, and the actual use being made of the land by defendant, were not entirely different uses and purposes from those had in view when the land was condemned. Cf. St. Louis-San Francisco R. Co. v. Silver King Oil & Gas Co., 234 Mo. App. 589, 127 S. W. 2d 31 (certiorari quashed, State ex rel. Frisco v. Shain, 345 Mo. 574, 134 S.W. 2d 89). On the contrary, defendant's use of the tract is one of the uses for which the land was condemned.

We hold, therefore, that the trustees could and did effectively convey to defendant its easement in the 80-foot strip for railroad right-of-way purposes.

We think our conclusion herein is not contrary to the authorities upon which plaintiffs rely. In State ex inf. Jones v. Light & Development Co., 246 Mo. 618, 152 S.W. 67, the grantee of a franchise (authorizing the placement of wires, tubes, and cables for the purpose of producing light or power along the streets and alleys of a city) failed to exercise the privilege for more than 20 years. While that case is not controlling on the facts of instant case, it does demonstrate that non-user of a right or privilege may be of such duration that such nonuser, along with other facts, may constitute an abandonment; and this, irrespective of a later declared purpose of the grantee to exercise its rights under the franchise at some indefinite future time.

In Chouteau v. Missouri Pac. Ry. Co., 122 Mo. 375, 22 S.W. 458, the question was whether a widow was dowable in an easement which had been granted to defendant's predecessor. After deciding that the condemnor-railroad acquired an easement and not a fee simple title, the

894

court went on to distinguish (in a minority concurring opinion) a certain case. The court said at 22 S.W. 460: "And whatever right was acquired by the defendant company or its predecessors could not have been disposed of except *as a whole,* and not in detached or fractional portions; and, when disposed of, could only have been disposed of to another railroad corporation for those uses, and those alone, for which the original grant was made. The attempt to divert the subject of the grant to other purposes would result in reversion to the last owner of the premises." The foregoing was quoted in Allen v. Beasley, 297 Mo. 544, 249 S.W. 387. In the Allen case, the question, as stated by the court, was "whether or not, when a person conveys land to a railway company, as in this case, the title thereto reverts back to him when the land ceases to be used for railroad purposes." 249 S.W. 388[2]. While the quoted language was dictum in both cases, nevertheless, we construe that language as meaning that the "right" which it was said must be disposed of "as a whole" referred to the easement across the particular tract of land in controversy. We do not believe the court meant that a railroad could not dispose of a portion of a *total easement* across many individual tracts.

In The Roanoke Inv. Co. v. Kansas City & S. E. R. Co., 108 Mo. 50, 17 S.W. 1000, a right-of-way across a tract of land was conveyed in 1873 to the defendant's predecessor, so long as the land was used for railroad purposes. A roadbed was partially constructed. The original grantee railroad was adjudged bankrupt. The trustee sold the right-of-way and by various conveyances it became the property of the Kansas City Southern Construction Company. Thereafter, the Kansas City & Southern Railway Company was organized and in 1880 acquired the right-of-way from the construction company. No further work was done on the roadbed. In 1882 the original grantor conveyed the land to a fair company which took possession of the entire tract, including the right-of-way, and built a race track thereon which crossed the right-of-way, at two places. Five fairs were held on the land. In 1887, the fair company conveyed to plaintiff, subject to any claims to the right-of-way. Thereafter, apparently, K. C. & Southern (after it had refused to use the right-of-way for construction of its railroad because the grade was too heavy) conveyed the right-of-way to defendant.

On those facts, it was held that nonuser alone, from 1874 to 1887, did not work an extinguishment of the easement; but that there had been an abandonment of the right-of-way by the K. C. & Southern R. Co. The court said (17 S.W. 1004): "But the evidence of abandonment does not rest upon the non-user for 13 years; the actual diversion of the road from this route; upon the clearly expressed intention to abandon; and standing by five or six years while the fair company was expending immense sums of money in improvements upon this land, and actually filling up the cut, without protest. In addition to all this, the company signalizes its final abandonment by conveying the 11 miles of

road, including the land in question, to another corporation organized to .operate a railroad 11 miles in length,—a· purpose not contemplated by either grantor or grantee when the right of way was granted.

· ''We think, when this was done, the intention to abandon, and the absolute abandonment, were consummated, the easement was lost, and the lands in question became discharged of this burden. Acts so decisive and conclusive in character as these have but one meaning. They indicate and prove a clear intention to abandon the right of way. Moore v. Rawson, 3 Barn. & C. 332; Liggins v. Inge, 7 Bing. 682; Railroad Co. v. Covington, 2 Bush. 526.

''It is not the policy of the law to permit a railroad to acquire a right of way to build a railroad, do some work on it, and then, after changing its route, and abandoning the easement, still claim and exercise the right to sell the right of way to another. The statute permitting it to acquire land limits it for its own corporate purposes. It is not allowed to enter the market and speculate in real estate in this manner.

''When it ceases to use the land for the legitimate purposes indicated in its charter, the lands revert to their owner.''

The Roanoke case is distinguishable on its facts. True, some of the quoted language, standing alone and not considered in connection with the factual situation which the court was then ruling, lends some support to instant plaintiffs' contention. However, we do not construe the opinion (considered as a whole) to mean that, after a railroad company has built its line of railroad in accordance with the·authorization of its charter and has operated for several years, it may not dispose of a portion of its right-of-way to another railroad company for continued use for railroad right-of-way purposes without thereby abandoning the easement which it sought to transfer. Such a holding, carried to its logical conclusion, would mean that a railroad company which had originally condemned land for the purpose of running trains from Kansas City to St. Louis and from St. Louis to Cape Girardeau, could not thereafter transfer to another railroad company for right-of-way purposes, any portion of the right-of-way condemned without thereby abandoning the·railroad right-of-way easement over each individual tract of land.

In our attempt to correctly decide this case, we have failed to find a reported case involving a factual situation sufficiently similar to be considered an authority for the exact propositions here ruled. However, for discussions of the underlying principles decisive of the questions here involved, see: Stevens v. St. Louis, M.B.T. Ry. Co., 152 Mo. 212, 53 S.W. 1066; Eureka Real Estate & Inv. Co. v. Southern Real Estate & Financial Co., 355 Mo. 1199, 200 S.W. 2d 328, 330[1-3]; Hatton v. Railway, supra; Raleigh C. & S. Ry.Co. v. McGuire, Sup. Ct. N. Carolina, 88 S.E. 337, 339; Atlantic Mills, Inc. v. N.Y. Cent. R. Co., 214 N.Y.S. 123, 128[9, 10]; Green v. Penn R. Co., Md. Ct. of App., 118 A. 127, 128[1,2]; Cohn v. San Pedro, L. A. & S. L. R. Co. (Calif.),

284 P. 1051; Summerill v. Hunt, N. J. Sup. Ct., 55 A. 2d 833, 838[4], [5]; Pennsylvania Co., etc. v. Cincinnati & L.E.R. Co., Dist. Ct., S.D. Ohio, W.D., 43 F. Supp. 5; 30 C.J.S., Eminent Domain, § 451(c), p. 209, § 454, p. 215, § 458, p. 217; 74 C.J.S., Railroads, § 117, p. 541; 18 Am. Jur., Eminent Domain, § 127, p. 750; 44 Am. Jur., Railroads, § 105, p. 320, §§ 107, 108, p. 322.

The judgment is reversed with directions to enter judgment in accordance with the views herein expressed. *Van Osdol* and *Lozier, CC.*, concur.

PER CURIAM:—The foregoing opinion by COIL, C., is adopted as the opinion of the court. All the judges concur.