ST. LOUIS-SAN FRANCISCO RAILWAY COMPANY v. F. M. DILLARD, Appellant.—43 S. W. (2d) 1034.

Division One, November 20, 1931.

*Von Mayes* for appellant.

1156

*E. T. Miller* and *Ward & Reeves* for respondent.

STURGIS, C.—Suit in ejectment to recover the major portion of a small triangular tract of land in the town of Wardell, Pemiscot County, claimed by plaintiff to be part of its right-of-way and depot grounds. The railroad runs nearly north and south through this town and its general right-of-way is 100 feet wide, and this tract adjoins and is an enlargement of the right-of-way on the east. The tract in question is 45 feet wide at the south and comes to a point 225 feet further north. The railroad runs at an angle eastward and this tract is between the standard right-of-way line and Railroad Street running north and south.

The petition is in conventional form in ejectment, praying judgment for possession and small damages. The answer contains a general denial and pleads as an affirmative defense the Statute of Limitation of ten years; also an estoppel in that plaintiff stood by and without protest permitted defendant to place valuable improvements on said disputed tract. The question of defendant's adverse possession for more than ten years before the bringing of this suit was the issue most strongly contested. A jury was waived and the case tried by the court as a jury, resulting in a judgment for plaintiff. The defendant filed motion for new trial, which was overruled, and the case is here on defendant's appeal in due form.

Both parties say and so stipulated that John Winters is the common source of title, though it is shown that plaintiff's title or claim of ownership antedated the claim of ownership by Winters. In fact, Winters testified that when he bought the land (from whom he does not say) there was a switch or spur track, connecting with the main line, on this triangular tract in controversy, and plaintiff was to that extent at least in possession. The parties, however, tried the case by agreement that John Winters is the common source of title and the prior title was not inquired into except incidentally. Plain-

tiff, however, put in evidence the original plat of the town of Moscou, the name being later changed to Wardell, which shows that the owners at that time, February, 1901, were James F. and Robert L. Warren. Evidently the railroad was then constructed or being constructed as this plat shows the line of the right-of-way through the town, and on the tract now in controversy is marked a small rectangle designated "Depot." Evidently it was intended by the persons laying out and platting the town and owning the whole body of land that the railroad would build its depot at or near this point, and this may account for the right-of-way being wider at this point than the 100 feet. What actually happened, however, was that the railroad built its depot on the west side of its main line track nearly opposite the point so designated, but it did build a switch track extending beyond its usual right-of-way onto the tract in controversy. Evidently the railroad then claimed and occupied this tract as part of its right-of-way.

As we have said, John Winters, the agreed common source of title, testified that when he bought the land in question this railroad had a switch on it—the plaintiff company "put it there and they used it for a switch." Winters further says that he then in 1905 "undertook to make them move the switch off that land" and brought suit for such purpose. Such proceedings were had in that suit, John Winters, plaintiff v. St. Louis, Memphis & Southeastern Railroad Company et al., defendants, that a judgment or decree was entered at the November Term, 1905, of the Circuit Court of Pemiscot County, which is not set out in full, but by which decree defendant says "the title to said property was divested out of said Winters and vested in the St. Louis, Memphis & Southeastern Railroad Company, a corporation," plaintiff's predecessor in title. It is on account of this decree that plaintiff traces its title to John Winters and concedes him to be the common source of title.

Some eight years later, in 1913, John Winters, notwithstanding this decree divesting him of title, conveyed this land by warranty deed to the present defendant. Defendant says that he did not have or consult an abstract of title when making the purchase, did not know of the decree divesting his grantor of title, though same was a public record, and bought in good faith, believing he was getting a good title, though he admits that he knew this railroad switch was then and had been for years on the land and in use as part of the railroad.

Defendant further testified that he at once on purchasing from Winters began using parts of the tract in question. There was already a small building there which had been used as a blacksmith shop, and defendant used this to store machinery. In a year or so he built a warehouse on this tract, and about three years later built

another warehouse. Not long before this suit was brought he built a store building on this tract. In his letter to plaintiff written June 2, 1926, some six months before this suit was commenced, asking for a lease of this tract, he said: "About ten years ago I built a warehouse on this land. And later on I built an addition to it. Then last year I built a storeroom on it and you never said one word to me that you claimed the land." He also testified: "I used a part of it continuously since 1913 for storing plows and things. I didn't use it much until the last seven or eight years." This suit was commenced some fourteen years after defendant obtained his deed from Winters and commenced his claimed possession. In the meantime and shortly after defendant's deed, the plaintiff moved its switch track over on the 100-foot right-of-way, and defendant says this was done on his demand and notice from him to do so. Plaintiff did not use this part of its right-of-way, if it was such, after moving the switch, and defendant says he had sole possession. It appears, however, that at the time defendant got his deed and commenced to use this tract this line of railroad was little used and its right-of-way unenclosed. No depot had been built, and no station agent was maintained there. There was not even regular daily train service. This may account for plaintiff's indifference in allowing its right-of-way to be encroached upon. This condition, however, changed, a depot was built, a station agent employed, and much railroad business was transacted. As a consequence plaintiff began looking more closely after its property, had surveys made, and at least a year before this suit was commenced openly asserted its ownership of this tract of ground as part of its right-of-way. When defendant heard all this he investigated the title and applied to plaintiff for a lease on this tract of land. In his letter to plaintiff on June 2, 1926, among other things, he says: "Have just made application for lease on some land situated north of Broad Street and between your railroad right-of-way and Railroad Street in Wardell, Missouri, which you state in your letter to your agent here that I have encroached upon, and from the records at the county seat it seems that I have, but not intentionally. I have had a warranty deed for this plat of land for thirteen years. . . . Since your agent here called my attention to this matter I have examined an abstract that was made for another fellow that covered this and other lands and it shows that in 1905 Mr. Winters sued you for using his land for a spur, and some kind of compromise was made in which went to you all title to this land. If this record is true, then of course you hold the best title to this land, but I certainly wish you had called my attention to this sooner as the buildings that I have put on it since I have owned it has cost me around $2000. . . . Of course if I had got an abstract at the time, it would have shown

1160

the same as today, but I had known Mr. Winters for many years and had no reason to doubt his word."

Defendant does not claim that plaintiff was unwilling to make a lease to him of the land on which the buildings were situated, but after consulting a lawyer he concluded not to take a lease. This suit then followed. If we have stated the facts most favorable to plaintiff, that is proper on defendant's appeal.

On the trial of this case before the court sitting as a jury no finding of facts was made and no declarations of law were asked or given. The assignments of error here are (1) that under the undisputed facts the judgment should have been for the defendant; and (2) that the court erred in overruling the motion for a new trial. Under our repeated rulings, this last assignment is too general to warrant our giving it attention. Besides, when we look at the motion for a new trial, we find no complaint except that the judgment is against the law and the evidence, and that under the law and evidence the judgment should be for defendant.

Under this state of the record, if there is any theory supported by substantial evidence or reasonable inference therefrom warranting a finding for plaintiff, the judgment should be affirmed. [Crowell-Spencer Lbr. Co. v. Hill, 242 S. W. 427; Brown v. Houghton Const. Co., 227 S. W. 137; Bubach v. Musick, 256 S. W. 116; Federal Land Bank v. International Life Ins. Co., 260 S. W. 822.] This is the rule even where the burden of proof is on the winning party. Here the defendant does not even contend but that plaintiff has the legal title and made a prima-facie case. He relies on adverse possession under claim of ownership for the ten-year statutory period of limitation. This is an affirmative defense and the burden of proof is on defendant as to all the elements entering into adverse possession, such as length of time, continuity, being open, and under claim of ownership. These are questions of fact and the finding of the court is the same as that of a jury. Where defendant's evidence is all oral, as here, and not absolutely free from all doubt, even if there is no countervailing evidence, the finding of the court is not open for review here.

In a case comparable to this on the facts, in that plaintiff had a clear legal title and defendant relied on the ten-year Statute of Limitations under color of title, Union Trust Co. v. Hill, 283 Mo. 278, this court en banc said: "It will be observed from the statement of facts that appellant relied in part upon the Statute of Limitations to sustain his claim to the lands in question, and that he introduced evidence tending to show that he had been in possession of the lands above described a sufficient length of time for possession to have ripened into title. It will

also be observed that respondent introduced no evidence to the contrary. The case was a law case, tried to the court without the aid of a jury. As stated, no declarations of law or findings of fact were asked by appellant, and none were given. Respondent now contends that the finding of the trial court upon the questions of fact involved precludes a review of the evidence by this court, and that the judgment must for that reason be affirmed. This contention must be sustained upon the authority of a long line of cases beginning with Bryan v. Wear, 4 Mo. 106, and continuing down to the case of State ex rel. v. Sturgis, 276 Mo. 559, 1. c. 570. Among many cases maintaining this doctrine, the following may be cited: Gannon v. Gas Co., 145 Mo. 502, 1. c. 515, etc. The reasons for this rule are set forth at length in the opinions in these cases, particularly in the Gannon case, and need not be repeated here. . . . In actions at law the weight even of undisputed parol evidence is for the triers of fact and their finding is conclusive on appeal. In this instance the trial judge was a trier of the facts, and his decision is to be treated, under the circumstances here shown, as the verdict of a properly instructed jury.''

See also Zimmerman v. C. G. W. Ry. Co., 156 Mo. 561, 566, and Wischmeyer v. Richardson, 153 Mo. 556.

From the fact that this land was of little value for business purposes at the time defendant bought it from Winters, about $50 according to his evidence, and from his indifference as to the title of his grantor and his limited use of the land for many years thereafter and other facts reasonably inferred from the evidence, the trier of the facts may well have discredited defendant's claim of adverse possession under bona-fide claim of ownership during the whole of the ten years. Possession alone does not ripen into title. [Baber v. Henderson, 156 Mo. 566, 573.]

It is also the well settled law of this State that lands acquired and held for legitimate railroad purposes are exempt from the bar of the Statute of Limitations. Such lands are devoted to a public use and are not lost to the owner by adverse possession under the ten-year Statute of Limitations applicable to real estate generally. Such is the effect of our statute. [Hannibal & St. Joseph R. Co. v. Totman, 149 Mo. 657; Railroad v. Baker, 183 Mo. 312, 323; Powell v. Railroad, 215 Mo. 339, 352, 358.]

Nor is this rule of law confined to the usual or standard right-of-way of railroads, but extends to lands reasonably necessary for depot and station grounds, stock yards, pens, switch and storage yards, etc. [Railroad v. Smith, 170 Mo. 327, 332; Railroad v. Baker, 183 Mo. 312, 322.]

In the Smith case, supra, this is said: ''The property is a part

of the strip of land running through the town of Gower, and marked on the plat of the town as 'Railroad Right-of-Way,' 'Railroad Stock Yards and Grounds.' It lies adjacent to the 'Railroad Right-of-Way,' and is as much a necessary and proper appurtenant to the operation of a railroad as depot grounds are, for it is the depot for the loading and unloading of stock. It therefore falls within the rule laid down in Omaha & St. Louis Ry. Co. v. Wabash, St. Louis and Pacific Railway Co., 108 Mo. 298.'' And in Railroad v. Baker, supra, the tract of land in question was outside the right-of-way and part of a large tract ''Reserved for Depot Grounds.''

Nor is it necessary that such additional grounds be actually used or necessary under the then conditions for such purpose. The railroad has a right to provide for and anticipate its future growth and needs in this respect. [Railroad v. Smith, 170 Mo. 327, 333; Railroad v. Baker, 183 Mo. 312, 325.]

In the Smith case, supra, the court said on this point: ''The fact is emphasized in these cases, that the railroad is not cut off from its right to claim that such land is appropriated to a public use, because it had not previous to the controversy actually used it for a right-of-way, depot grounds, etc., for it was pointed out that if the land was within the designation the company was not obliged to *actually occupy* it until it became necessary or desirable for it to do so, and that any one who enters upon land so owned by a railroad company, and erects improvements thereon, does so at his peril, and is affected with notice of the rights of the railroad to such land, and that *no possession can be adverse to the railroad* or be made the basis of a *title by limitation* as against the railroad, no matter how long that possession may continue. These are the logical and necessary sequences flowing from the Constitution of this State in reference to property so held by railroads for such uses, as was pointed out by this court in Thompson v. Railroad, 110 Mo. 1. c. 160.'' This language was quoted with approval in Railroad v. Baker, 183 Mo. 312, 325.

It may be that lands owned by a railroad might be so disconnected with any reasonable use which the railroad might reasonably require or which have been so entirely abandoned as a part of the railroad right-of-way, depot grounds, etc., that same become subject to the Statute of Limitations the same as lands privately owned. Whether this condition exists would become a question of fact and possibly was such in the present case. The trial court found against any such contention, and of course this finding is conclusive here.

Defendant stresses the point that the plaintiff railroad abandoned the tract in question as being part of its lands used for railroad purposes many years ago and cannot now change its purpose and

recover the same. While this court has held that in this State and at common law "title to real property can neither be gained nor lost by abandonment operating alone" (Powell v. Bowen, 279 Mo. 280, 214 S. W. 142), and when combined with adverse possession, as we have seen, cannot do so under the Statute of Limitations, yet the doctrine of abandonment will in some cases operate against railroads. [Roanoke Investment Co. v. Kansas City & S. E. Ry. Co., 108 Mo. 50, 64; Hatton v. Railroad, 253 Mo. 660, 676; St. Joseph v. Railroad, 268 Mo. 47, 55.]

In the Hatton case, supra, this court said that, to constitute an abandonment, "there must be an intention to relinquish the possession (and use) of the property, without an intention to again repossess it." And in the Roanoke Investment Company case, supra, this is said: "But while it is true, that mere non-user will not amount to an abandonment, it is well settled that an easement acquired by grant or its equivalent may be lost by abandonment. To constitute an abandonment of an easement acquired by grant, acts must be shown of such an unequivocal nature as to indicate a clear intention to abandon."

All the cases hold that the facts showing an abandonment must be strong and convincing.

The fact that the railroad company constructed a switch partially on this land and used it several years; that when it was sued in 1905 it strenuously defended its ownership and obtained a decree divesting the defendant's grantor of all claim of ownership; and again in 1927 brought and has maintained this suit, tends to repudiate the idea that it at any time completely abandoned its right to use this land for railroad purposes. Even if the trier of the facts was compelled to accept as wholly true defendant's statement that the plaintiff did at his demand remove that part of the railroad switch on the land in controversy to its regular right-of-way and did not actively use this tract thereafter, yet that is not the only fact bearing on this question, and, the trial judge having found for plaintiff on the question of abandonment, the same is closed here.

Nor will we pass on the weight of the evidence as to estoppel. We have already stated the salient facts. Plaintiff's action in permitting defendant to occupy and use parts of this tract for storage purposes and later to build a substantial storeroom on the same was merely passive or permissive. If defendant's evidence was sufficient to sustain estoppel, that merely made it an issuable fact, which the trier of the facts resolved against defendant.

Our conclusion is that the judgment should be affirmed and it is so ordered. *Ferguson* and *Hyde*, *CC.*, concur.

PER CURIAM:—The foregoing opinion by STURGIS, C., is adopted as the opinion of the court. All of the judges concur.