James H. DALTON and Leona I. Dalton, Appellants,

v.

D. A. JOHNSON, Respondent.

No. 47224.

Supreme Court of Missouri, Division No. 1.

Feb. 9, 1959.

James L. Paul, Pineville, for appellants.

W. J. Collingsworth, Pineville, and Douglas & Douglas, Neosho, for respondent.

HOLMAN, Commissioner.

In this action plaintiffs sought an adjudication to the effect that they had

acquired an easement by prescription to use a fenced passageway over land owned by defendant. A trial before the court resulted in a judgment for defendant. Plaintiffs appealed to the Springfield Court of Appeals but that court was of the view that title to real estate was directly involved and accordingly transferred the case to this court. Dalton v. Johnson, Mo.App., 319 S.W.2d 66. We agree that appellate jurisdiction is in this court for the reason indicated in the opinion of the court of appeals.

The easement plaintiffs sought to establish was the right to use a strip of land approximately 20 feet wide and 200 feet long as a passageway (referred to in the evidence as a "waterway") running from the northwest corner of plaintiffs' land across the defendant's land to Patterson Creek and which had been maintained for the purpose of enabling livestock to pass from plaintiffs' land to Patterson Creek in order to drink water therefrom. The passageway was bounded on the west by the fence which ran along a public road in or near the town of Coy, and on the east by a fence attached to trees. These two fences apparently came together at a post that had been set in the bed of the creek thus creating a wedge-shaped northern boundary. The fact that the east fence had been attached to trees caused the passageway to be of varying widths. The plaintiffs alleged that they and their predecessors in title had openly and adversely used the described strip of land for the purpose indicated for more than 31 years. There was evidence that it had been in use for as long as 60 years.

Plaintiff James Dalton testified that he purchased the land in question in 1946 and had occupied it since he had moved to it in May 1947; that he had been acquainted with the land since 1937; that he knew the waterway had been used since that year as a means for livestock to go from the land he now owns to Patterson Creek for water; that no one had ever disputed the right to use said waterway until in July 1956

when the defendant built (and has since maintained) a fence across the south end of the passageway between his land and that of plaintiffs. Mr. Dalton testified further that he had not used the waterway from the time he moved to the property in May 1947 until April 1950, because he had not had any livestock until the last-mentioned date, but that he had used it continuously for the purpose of watering his livestock from April 1950 until defendant stopped him in July of 1956; that for a time Mr. Hatfield, who owned and operated the store at Coy, had used a part of the waterway for watering his livestock but that Mr. Hatfield had asked his permission to use the same. On cross-examination it was developed that the deed conveying the land to plaintiffs did not describe the waterway.

Mrs. Faye Crosby testified that she had worked for the Hutchinsons (plaintiffs' predecessor in title) in 1921 and that the waterway was in use at that time; that she had been familiar with the tracts of land owned by plaintiffs and defendant for 48 years; that she had been familiar with the strip of land running from the Dalton land to Patterson Creek since 1921, and from that date to 1956 it had been used by livestock going from the Dalton land to Patterson Creek.

Mr. Ed Smith stated that he had been acquainted with the instant tracts of land for 40 years and had been acquainted with the waterway in question since 1926; that from 1926 until 1956 it had never been closed to use by owners of the Dalton land; that prior to 1940 he had passed the land quite often, but since 1940 he had seen this strip of land almost every working day as he passed it on his way to work at Anderson, Missouri.

Mr. Clarence Crosby testified that he was born in 1906 on the land now owned by the plaintiffs; that the waterway running from the Dalton property to Patterson Creek had been in existence as long as he could remember, and had been used during that time for the purpose of watering stock kept on the Dalton property.

Mr. Ernest Shadwick testified that he had worked on the Dalton property for a year about 1915 or 1916 and that the waterway was in existence at that time. Apparently this witness does not have any knowledge of the use or maintenance of the waterway since that time.

It was shown by the testimony of Ray Warren that the waterway in question had been in existence for 40 years and that during all that time livestock on the Dalton property had had free access to the use of that passageway in order to water at Patterson Creek. The witness is a brother of Mrs. Dalton and had been out of the state for a number of years but testified that during that period he returned periodically and visited at the Hutchinson home and thus continued to have knowledge of the use of the waterway.

Mrs. Grace Hutchinson, mother of Mrs. Dalton, stated that she and her husband purchased the farm now owned by plaintiffs in 1919 and that she had lived there from 1919 until 1944. She stated that the waterway had been in existence throughout that period and had been continuously used by them, and that her husband (who died in 1939) had not obtained anyone's permission to use the passageway. She stated that she rented the land to Lester Griffin from 1944 to 1946, and that Griffin had kept cattle there and had used the waterway during that time.

The last witness for plaintiffs was Cooper Dawson. This witness stated that he had occasionally traveled the road which bordered on the passageway in question and that his first recollection as to the existence of the waterway was 60 years ago; that he had noticed it in use ever since that time except the period from 1900 to 1910 when he had been away.

Defendant presented a number of witnesses, the first of which was Dave Dennison. Mr. Dennison testified that he purchased what is now defendant's land in 1949; that at that time the west and north fence of the waterway was in a bad state of repair; that in 1950 Mr. Hatfield had asked his permission to drive hogs down there to water and that in the spring of 1950 Hatfield and Mr. Dalton had divided the passageway; that he had sold the farm to defendant in 1950; that he knew nothing about the use of this strip prior to 1949.

Mrs. Alma Hatfield stated that she and her husband began operating the store located on the property adjoining the passageway on January 1, 1947. She stated that at that time the fence on the north and west sides of the passageway were down but that the east fence was in fair shape; that in 1949 she and her husband repaired the fence next to the road and, with Mr. Dennison's permission, made a hog lot so that the hogs could go to the creek for water. She stated that the Daltons moved to their property in May 1947 and Mr. Dalton bought cattle and started using the passageway in 1950; that she knew nothing about the use of the passageway prior to 1947.

Defendant also read in evidence the deposition of Logan Hatfield. He stated that with Mr. Dennison's permission he started using the waterway in the fall of 1949; that in the spring of 1950 Mr. Dalton got some cattle and asked the witness to divide the strip with him; that a fence was put in which gave the witness approximately 10 feet for his hogs to use in going to the water, and left Mr. Dalton 20 feet for the use of his cattle; that he had moved from the store property in 1953.

Roy Crosby testified that the waterway had been in use as long as he could remember, except that he was not familiar with the period from 1944 to 1950; that at one time he had repaired the fence for Mr. Dalton.

W. M. Dean stated that he had known about the waterway for six years during which time it had been used by Mr. Dalton and by Logan Hatfield. He also stated that he helped repair the fence on the east side of the waterway while working for the defendant.

The defendant testified that he bought his tract of land about March 1, 1950; that at the time he bought this property he "knew there was this waterway there"; that he did not talk to Mr. Dalton about the cattle using the lane but "I talked to Mrs. Dalton about it at the store. She asked me if I would consider selling this piece of land and I told her * * * I did not want to sell it but they could use it until such time as I might need it."

In rebuttal plaintiffs called Richard G. Meers who testified that he was employed by Mr. Dalton in 1950 to repair the fence on the east side and north end of the waterway. This witness also testified that his father had owned the Dalton farm and had sold it to Mr. Hutchinson; that he was 19 years old at the time of that sale and that the waterway in question had been in existence as far back as he could remember.

Plaintiff James H. Dalton was also recalled in rebuttal and testified that he did not ask Hatfield to divide the passageway or ask his permission to use any part of it. Plaintiff Leona Dalton was called and testified that she did not remember having a conversation with the defendant regarding the purchase of this strip of land.

There were two general questions raised in the briefs. The first is whether the evidence discloses such use of the waterway by plaintiffs and their predecessors as to establish an easement by prescription. If that question is determined in the affirmative we must then consider whether the easement has been extinguished by nonuser or abandonment.

■ "In a case of this nature it is our duty to review the case de novo, weigh the competent evidence, and reach our own conclusions as to the facts, but 'due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses.' Section 510.310(4) RSMo 1949, V.A.M.S." Franck Bros., Inc. v. Rose, Mo.Sup., 301 S.W.2d 806, 811. The trial court did not file any statement of the grounds for its decision and hence we have no way of knowing the theory upon which it rendered the judgment for defendant.

■ An easement may be established by use which is shown to have been continuous, uninterrupted, visible and adverse for a period of 10 years. Smith v. Santarelli, Mo.App., 207 S.W.2d 543. The evidence in the record before us is overwhelmingly to the effect that the passageway in question had been established and had been in continuous, open and uninterrupted use by plaintiffs' predecessors in title for at least 30 years before plaintiffs purchased the property in 1946. It is true that there was no specific testimony as to the adverse character of the use. However, "a use of land is adverse to the owner * * * when it is not made in subordination to him, and * * * [is] open and notorious." 5 Restatement, Property, Section 458, p. 2924. Moreover, we have stated that "in the absence of some showing that the use was permissive in its origin it is well settled that when one claims an easement by prescription and shows an open, continuous, visible, and uninterrupted use for the period of the 10-year statute of limitation, the burden is cast upon the landowner to show that the use was permissive, rather than adverse, if he claims it to have been so." Fassold v. Schamburg, 350 Mo. 464, 166 S.W.2d 571, 572.

No evidence was presented which would indicate that the use of the passageway herein was permissive in its origin or that the use of it by plaintiffs' predecessors was ever permissive. The boundaries of the strip so used were clearly defined. Furthermore, the use was about as open and visible as one could imagine as the passageway was bounded on the west by a public road and adjoined the land upon which was located a village store. Under those circumstances it is fair to assume that the various owners of the servient tenement had knowledge of the use and full opportunity to assert their rights. In that con-

nection it should be noted that defendant testified that he knew of the waterway when he bought his tract.

 The overwhelming and undisputed evidence supports the conclusion that plaintiffs' predecessors in title acquired an easement by prescription to use the instant passageway for the purpose indicated long before the land was conveyed to plaintiffs. The easement so acquired became an appurtenance to the dominant estate and passed to plaintiffs upon the conveyance of that land to them even though the easement was not mentioned in the deed. In ruling that the easement was conveyed to plaintiffs, we are not unmindful that we have recently said that "there must be a conveyance of property claimed by adverse possession by some act (by gift or otherwise) in order to effectuate a transfer of such property from the adverse holder to the grantee. Absent this, there can be and there is no transfer to the grantee of any right acquired by the grantor." Lurvey v. Burrell, Mo.Sup., 317 S.W.2d 458, 461. However, that case involved the title to land adjoining the tract conveyed. A different rule applies to appurtenant easements. It has long been established that an appurtenant easement (including one acquired by prescription) passes with a conveyance of the dominant tenement even though it is not specifically mentioned in the deed of conveyance. Smith v. Santarelli, supra; 17A Am.Jur., Easements, Section 150, p. 754; 28 C.J.S. Easements § 46, p. 708.

 Since we have held that plaintiffs obtained the instant easement with their purchase of the land in 1946, the only issue remaining for determination is whether that easement has been extinguished by nonuser or abandonment. An easement created by grant is not extinguished by mere nonuser however extended the period of nonuser may be. Franck Bros., Inc. v. Rose, supra. It has been suggested that there is no good reason for making a distinction between easements created by grant and those acquired by prescription.

28 C.J.S. Easements § 60c, p. 727. However, the weight of authority is that an easement created by prescription is lost by mere nonuser for the same period as was required to establish it. Annotation, 25 A.L.R.2d 1265, 1283. Assuming (but not deciding) that the rule last stated is applicable in this state, it appears clear that plaintiffs did not lose their easement by nonuser as the period they failed to use it was just a little more than three years.

 We will next consider the question as to whether plaintiffs lost their easement by abandonment. "An easement may be extinguished by abandonment. American Law of Property, Vol. II, § 8.96, p. 302; Powell on Real Property, Vol. 3, § 423, p. 493; St. Louis-San Francisco R. Co. v. Dillard, 328 Mo. 1154, 1162, 43 S.W. 2d 1034, 1038 [12]. Whether there has been an abandonment is a question of fact. 17 Am.Jur., Easements, § 142, p. 1026. An abandonment is proved by evidence of an intention to abandon as well as of the act by which that intention is put into effect; there must be a relinquishment of possession with intent to terminate the easement. Hatton v. Kansas City, C. & S. R. Co., 253 Mo. 660, 676, 162 S.W. 227, 232. While an intention to abandon may be inferred from circumstances strong enough to warrant that inference, an abandonment must be proved by clear and convincing evidence." Hennick v. Kansas City Southern Ry. Co., 364 Mo. 883, 269 S.W.2d 646, 650.

 The fact that plaintiffs did not use the passageway or keep some of the fences in repair during the three-year period they had no stock on their farm would be little, if any, evidence of an intention to abandon the easement. The fence between the passageway and the servient tenement was "fairly good" and would "hold cattle." Respondent next points to the testimony of Mr. Hatfield that Mr. Dalton "asked me to divide the strip with him." Mr. Dalton denied that he had made that request, and, on the contrary, stated that Hatfield had asked his permission to use the strip.

However, even if it be assumed that Mr. Dalton did make the request, we do not regard that fact as being greatly significant. It should be noted that he did not address the request to the owner of the servient tenement but to a neighbor who had recently repaired the fences and started using the strip. It did not indicate an intention to abandon the easement, but, on the contrary, showed an intent to start using it. The most that can be said against Mr. Dalton in that regard is that it may have indicated that he had some doubt as to his right to use the easement under the circumstances. However, we think it was merely an effort to avoid a dispute with a neighbor who, it may be noted, readily surrendered two thirds of the strip to plaintiffs for their use.

 Finally, defendant asserts that the evidence that Mrs. Dalton asked him if he would consider selling the instant strip indicates that plaintiffs had disclaimed any title or interest in that land. We do not agree. It should be noted that Mrs. Dalton did not ask defendant if he would sell an easement to use the land but asked if he would sell "this piece of land." That evidently would include the fee title and included an interest which plaintiffs have never claimed. Moreover, we have heretofore said that "A direct purchase of any ostensible title by one in possession has no such force as an admission. A party in possession of land may fortify his right thereto by acquiring any outstanding interest therein, without thereby weakening the force or effect of his possession." Mather v. Walsh, 107 Mo. 121, 131, 17 S.W. 755, 757. See also Feinstein v. McGuire, Mo. Sup., 297 S.W.2d 513. We conclude that the inquiry made by Mrs. Dalton would not indicate a disclaimer of plaintiffs' right to the possession and use of the easement under consideration.

Upon our review of all the evidence we entertain the view that plaintiffs' claim that they have an easement to use the strip of land heretofore described, for the purpose of permitting their livestock to pass over the same to obtain water, is sustained by the overwhelming weight of the evidence. It accordingly follows that the trial court should have entered a judgment in favor of plaintiffs.

The motion of respondent to dismiss the appeal because of appellants' alleged violation of S.C. Rule 1.08, 42 V.A. M.S., is hereby overruled.

The judgment is reversed and cause remanded with directions to the trial court to enter a judgment for plaintiffs.

VAN OSDOL and COIL, CC., concur.

PER CURIAM.

The foregoing opinion by HOLMAN, C., is adopted as the opinion of the court.

All concur.