[Cite as *State ex rel.l Williams v. Indus. Comm.*, 2018-Ohio-1161.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio ex rel. Ernest Williams, | : | |
| Relator, | : | |
| | | No. 17AP-157 |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Industrial Commission of Ohio et al., | : | |
| Respondents. | : | |

D E C I S I O N

Rendered on March 29, 2018

**On brief:** *Agee, Clymer, Mitchell, & Portman,* and *Gregory R. Mitchell,* for relator. **Argued:** *Gregory R. Mitchell.*

**On brief:** *Michael DeWine*, Attorney General, and *Kevin J. Reis,* for respondent Industrial Commission of Ohio. **Argued:** *Kevin J. Reis.*

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

BROWN, P.J.

{¶ 1} Relator, Ernest Williams, has filed an original action requesting this court to issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate the April 15, 2016 order of its staff hearing officer ("SHO") denying relator's request for permanent total disability ("PTD") compensation on grounds that he voluntarily abandoned the workforce, and to enter an order finding that he re-established eligibility for such compensation when he worked for two weeks in 2015 driving a truck.

{¶ 2} This court referred the matter to a magistrate pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals. The magistrate issued the appended decision, including findings of fact and conclusions of law, recommending this court deny relator's request for a writ of mandamus.

{¶ 3} Relator has filed two objections to the magistrate's decision. Relator first asserts the magistrate erred in concluding the commission did not abuse its discretion in utilizing an improper standard to find voluntary abandonment. Specifically, relator challenges language in the SHO's order stating his testimony failed to represent a "good faith" effort to return to work; relator maintains no statute or administrative rule provides for such analysis. Under his second objection, relator contends the SHO erred in failing to consider medical evidence indicating he could not work due to his industrial injury.

{¶ 4} Under Ohio law, "[a] claimant's eligibility for permanent-total-disability compensation may be affected if the claimant has voluntarily retired or abandoned the job market for reasons not related to the industrial injury." *State ex rel. Black v. Indus. Comm.,* 137 Ohio St.3d 75, 2013-Ohio-4550, ¶ 14, citing *State ex rel. McAtee v. Indus. Comm.,* 76 Ohio St.3d 648 (1996). The voluntary nature of a claimant's abandonment of the workforce "is a factual question within the commission's final jurisdiction." *State ex rel. Krogman v. B&B Enters. Napco Flooring, LLC,* 10th Dist. No. 14AP-477, 2015-Ohio-1512, ¶ 8, citing *State ex rel. Burley v. Coil Packing, Inc.,* 31 Ohio St.3d 18, 31 (1987).

{¶ 5} The stipulated record in this action indicates that relator, who was injured on May 5, 1978, has filed applications for PTD compensation in 1991, 1994, 1997, 2000, and 2015. The commission denied all five applications, including the 2015 application which is the subject of this original action. Relator also moved for temporary total disability ("TTD") compensation in 2013 and, following a hearing, a district hearing officer ("DHO") issued an order denying TTD compensation. Relator filed an administrative appeal, and an SHO issued an order affirming the DHO; in that order, the SHO noted the lack of documentation of any attempt by relator to find work since at least the commission's order of 2001 in which it denied relator's request for PTD compensation and made a finding of abandonment of the workforce.

{¶ 6} In denying relator's most recent application for PTD compensation, the SHO determined that relator had "long ago abandoned the workforce," last working "in

August of 1986."  The SHO noted several earlier attempts by a rehabilitation provider to coordinate evaluations, but relator failed to present himself for appointments and failed to indicate an interest "to proceed with rehabilitation evaluations or services."  The SHO further found "no persuasive evidence on record that the Injured Worker since 1986 has ever made any attempt to return to work," and that his "testimony regarding a return to work in 2015 is not found to represent a legitimate attempt to return to work."

{¶ 7}   In addressing the issue of whether relator re-established eligibility for PTD compensation by working two weeks in 2015, the SHO noted testimony by relator "that in 2015 he called a friend and that his friend gave him a job driving a gravel truck."  Relator indicated, however, "he was unable to do this job after two weeks."  Noting that in the "last denial" of PTD compensation, relator "was found to be limited to sedentary work," the SHO observed that "[d]riving a gravel truck would not be classified as sedentary work."  The SHO further stated that relator's "attempt to return to work after almost three decades of inactivity is not found to represent a genuine attempt to return to work."

{¶ 8}   Upon review, the record does not support relator's contention the SHO utilized an improper standard in analyzing the issue of voluntary abandonment.  The Supreme Court of Ohio has noted "[t]he question of abandonment is 'primarily [one] of *intent* [that] may be inferred from words spoken, acts done, and other objective facts.' " (Emphasis added.)  *State ex rel. Diversitech Gen. Plastic Film Div. v. Indus. Comm.,* 45 Ohio St.3d 381, 383 (1989), quoting *State v. Freeman,* 64 Ohio St.2d 291, 297 (1980). Similarly, it has been "held that ' "[a]n abandonment is proved by evidence of *intention* to abandon as well as of acts by which the *intention* is put into effect." ' " (Emphasis added.) *Id.*, quoting *West Park Shopping Center v. Masheter,* 6 Ohio St.2d 291, 297 (1966), quoting *Dalton v. Johnson*, 320 S.W.2d 569, 574 (1959).  Further, "[t]he presence of such *intent,* being a factual question, is a determination for the commission." (Emphasis added.) *Id.*  The Supreme Court has also held that "absent extenuating circumstances, it is not unreasonable to expect a claimant to participate in efforts to return to work to the best of his or her abilities."  *State ex rel. Gulley v. Indus. Comm.*, ____ Ohio St.3d ____, 2017-Ohio-9131, ¶ 15.

{¶ 9}   In the instant action, notwithstanding the SHO's reference to "good faith," the order indicates the commission properly applied Ohio law, including a consideration

of intent, in determining the issue of voluntary abandonment.  The evidence before the commission and cited by the SHO indicates relator was capable of engaging in sustained remunerative employment but that he never attempted rehabilitation following his injury in 1978, nor did he seek any type of work over an approximately 30-year span.  As noted, relator argued he re-entered the workforce in 2015.  As to the issue of whether relator re-established eligibility for PTD compensation by working as a truck driver, the evidence before the SHO was that relator had contacted a friend who "gave him a job driving a gravel truck," a job which relator testified he was "unable to do * * * after two weeks."  The SHO, in addressing the facts and circumstances presented, observed that the job relator obtained from his friend was not classified as one within his sedentary restrictions.[1]

{¶ 10} In addressing the issue of abandonment, the commission has discretion to consider all the evidence before it in determining a claimant's intent, "including the weight and credibility of that evidence."  *State ex rel. Rockey v. Sauder Woodworking Co.*, 10th Dist. No. 09AP-888, 2011-Ohio-1590, ¶ 17.  Here, in finding an intent to voluntarily abandon the workforce, the SHO considered the conduct and choices by relator, including his ability to engage in sustained remunerative employment, his lack of interest in pursuing rehabilitation opportunities, the absence of any evidence that he had worked or made an attempt to return to work for approximately 30 years, and the fact that his only attempt at employment since 1978 involved a position not within his work restrictions.  It was within the province of the commission to assess the credibility of the evidence, including the testimony of relator, in making that determination.  Upon review, there was some evidence to support the commission's finding that relator voluntarily abandoned the workforce.

{¶ 11} Relator also contends the commission failed to consider medical evidence indicating he was unable to work due to his injury.  The magistrate, however, considered relator's arguments regarding the report of Dr. Sai Gutti, noting the commission was not required to accept the July 2015 report as some evidence supporting PTD compensation.  Further, the threshold issue before the commission was whether relator, having

---

[1] In the commission's 2001 order denying relator's request for PTD compensation, the SHO cited the report of a physician indicating "the claimant has the residual capacity to perform work at the sedentary level."  The order of the SHO in the instant case notes that in the last denial of PTD compensation, relator "was found to be limited to sedentary work."

voluntarily abandoned the workforce years before, had re-entered the workforce by working two weeks in 2015. As set forth above, there was some evidence to support the commission's determination on that issue, including findings of the SHO that relator was, according to medical evidence, limited to sedentary work but that he sought employment not within those restrictions.

{¶ 12} Upon consideration of the objections, and having independently reviewed the magistrate's decision, we overrule relator's objections to the magistrate's decision and adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. In accordance with the recommendation of the magistrate, the requested writ of mandamus is denied.

*Objections overruled; writ denied.*

KLATT and BRUNNER, JJ., concur.

_____

# APPENDIX

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

The State ex rel. Ernest Williams,               :

         Relator,               :

v.                                               :               No. 17AP-157

Industrial Commission of Ohio                    :               (REGULAR CALENDAR)
and
Werner Maintenance & Construction Co.,           :

         Respondents.               :

---

### M A G I S T R A T E ' S   D E C I S I O N

**Rendered on October 6, 2017**

---

*Agee, Clymer, Mitchell, & Portman,* **and** *Gregory R. Mitchell,* **for relator.**

*Michael DeWine*, **Attorney General, and** *Kevin J. Reis,* **for respondent Industrial Commission of Ohio.**

---

### IN MANDAMUS

{¶ 13} In this original action, relator, Ernest Williams, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate the April 15, 2016 order of its staff hearing officer ("SHO") that denies his November 16, 2015 application for permanent total disability ("PTD") compensation on grounds that he voluntarily abandoned the workforce and is, thus, ineligible for the compensation, and to enter an order finding that relator re-established eligibility for the compensation when he worked for two weeks in 2015 driving a truck. Relator requests that the writ order the

commission to adjudicate the application on the merits in the absence of a finding that relator voluntarily abandoned the workforce.

Findings of Fact:

{¶ 14} 1. On May 5, 1978, relator injured his lower back and right hand while employed as a construction laborer for respondent Werner Maintenance & Construction Co., a state-fund employer. The injury occurred when he fell down some steps. He was 25 years of age on the date of injury. (Date of birth is January 4, 1953.)

{¶ 15} 2. The industrial claim (No. 78-19479) is allowed for "contusion lumbosacral area; contusion right hand; degenerative disc L4-5; disc bulge L4-5."

{¶ 16} 3. Relator has filed five applications for PTD compensation. His first application was filed on November 18, 1991.

{¶ 17} 4. Earlier, by letter dated September 11, 1987, relator was informed by the commission's rehabilitation division:

> Please accept this letter as a closure to your Rehabilitation File with this agency. This action is based on our inability to coordinate evaluations for you with the J. Leonard Camera Center of Columbus, Ohio. It is my understanding that two previous appointments have been made for you with the J. Leonard Camera staff in order to properly assess your physical, psychological, and vocational status. Both times you have not shown nor did you call to cancel.

{¶ 18} 5. Following a March 15, 1994 hearing, two SHO's issued an order denying the first PTD application. The order explains:

> This order is based particularly upon the reports of Commission Physical Medicine examiner William Nucklos, M.D.
>
> * * *
>
> Commission Physical Medicine examiner William Nucklos M.D. reported that this claimant is capable of all but heavy labor and can work full time within 25 pound lifting restrictions.
>
> This claimant is 41 years of age, his date of birth being 1/4/53; he reports having completed the 11th grade but being able to read, write, and figure. He also reports experience as

> a foreman in the construction industry. His history of three unrelated hernia procedures is noted for the record.
>
> Commission Physical Medicine Specialist William Nucklos, M.D. reports that this claimant is capable of any work short of heavy labor and that he can perform unlimited lifting within 25 pound restrictions. It is held that his youth at the age of 41, his completed 11th grade education and basic literacy, and the experience he accumulated as a working foreman all qualify him for re-employment within those restrictions.
>
> The undersigned are particularly stressing this claimant's youth both now and at the time of his injury in reaching this decision.

{¶ 19} 6. On May 12, 1994, relator filed his second PTD application. Following a May 21, 1996 hearing, an SHO issued an order denying the PTD application. The SHO determined residual functional capacity based on a report from William Nucklos, M.D. The SHO determined:

> [T]hat the claimant could perform employment consistent with sedentary and light levels of physical demands. The Hearing Officer therefore notes that the claimant's residual functional physical capacity has been at a consistent level and he therefore has been able, from a physical perspective level [to] obtain employment.

{¶ 20} The SHO also considered the non-medical factors in determining that relator is not permanently and totally disabled.

{¶ 21} 7. On October 2, 1997, relator filed his third PTD application. Following a December 15, 1998 hearing, an SHO issued an order denying the application. The SHO determined that relator has the residual functional capacity "to perform at least sedentary to light work." The SHO also considered the non-medical factors and determined "the claimant is not permanently precluded from returning to any type of sustained remunerative employment."

{¶ 22} 8. On June 22, 2000, relator filed his fourth PTD application. Following a January 9, 2001 hearing, an SHO issued an order denying the application. The SHO determined that relator "has the residual capacity to perform work at the sedentary level." The SHO also considered the non-medical factors. The SHO also determined that relator

failed to participate in a retraining program notwithstanding an ability and opportunity to do so. The SHO concluded:

> Therefore, claimant's disability factors when viewed as of 1985, or even presently, would not preclude the claimant from performing work at the sedentary level based on his physical capacities and vocational aptitude if he was so motivated to pursue such employment.

{¶ 23} 9. On March 22, 2013, relator moved for temporary total disability ("TTD") compensation beginning October 28, 2012.

{¶ 24} 10. Following a June 18, 2013 hearing, a district hearing officer ("DHO") issued an order denying TTD compensation. Relator administratively appealed the order.

{¶ 25} 11. Following a July 30, 2013 hearing, an SHO issued an order that affirms the DHO's order and denies the request for TTD compensation. The SHO's order explains:

> In [*State ex rel. Pierron v. Indus. Comm.*, 120 Ohio St.3d 40, 2008-Ohio-5245] the Ohio Supreme Court held that the purpose of temporary total compensation is to replace wages lost due to the allowed injury and there is no wages lost due to the injury if the Injured Worker abandons the work force. The court held the determination of whether the Injured Worker has abandoned the work force is one of intent that may be inferred from words, acts, and other objective evidence.
>
> In this case, the Injured Worker applied for permanent total disability on four occasions and was denied on 03/15/1994, 05/21/1996, 12/15/1998, and 01/09/2001 after being found capable of some level of sustained gainful employment. There is no documentation on file of any attempt to find work within the physical capacity found by the 2001 order denying permanent total disability. The lack of documentation of any attempt to find work since at least 2001 is found to show an abandonment of the work force under <u>Pierron</u> and based on this temporary total compensation is denied.

{¶ 26} 12. On July 7, 2015, pain specialist Sai P. Gutti, M.D. wrote:

> Mr. Ernest Williams has suffered work-related injury to his back and subsequently having increased pain in the lower back with shooting pain down the legs. Patient has

attempted to go back to work and he could not [do] it. He need[s] to continue pain management and interventional treatment from time-to-time as needed. MRI of the lumbar spine showed compression fracture of [illegible] and circumferential bulge at L1-L2 level and right paracentral posterior disc bulging at L3-L4 level and left paracentral disc bulging at L4-L5 level and mild degree of central and posterior disc herniation with annular tear at L5-S1 level. Electrodiagnostic studies revealed left L5 radiculopathy. Patient is having continuous pain with objective evidence of muscle spasm and decreased range of motion and dermatomal sensory loss. Because of the ongoing pain, I do not believe he will be able to participate in gainful employment at this time and I believe he is permanently total disabled.

{¶ 27} 13. On November 4, 2015, Dr. Gutti completed a pre-printed form captioned "Medical Questionnaire." The form was apparently drafted by relator's counsel. The form presents three queries as follows:

[One] Please state your last evaluation date of Ernest Williams.

[Two] In your opinion "within reasonable medical probability" do the recognized conditions of Degenerative Disc at L4-5 and Disc Bulge at L4-5 render Mr. Williams permanently and totally disabled from sustained remunerative employment?

[Three] If yes, do you believe that Mr. Williams has been permanently and totally disabled since his failed work attempt ended on 5/9/15?

In response to the first query, Dr. Gutti wrote "10-13-15."

In response to the second query, Dr. Gutti marked the "yes" box.

In response to the third query, Dr. Gutti marked the "yes" box.

{¶ 28} 14. On November 6, 2015, relator filed his fifth and most recent PTD application. In support, relator submitted the July 7, 2015 report of Dr. Gutti and the November 4, 2015 "Medical Questionnaire" completed by Dr. Gutti.

{¶ 29} 15. With his PTD application, relator also submitted payroll information from Sartin Contracting, Inc. regarding employee Ernest Williams. Sartin Contracting indicates relator was employed 40 hours per week for a two-week period ending on May

9, 2015. Relator was paid at the hourly rate of $15. His gross pay was $600 for each week worked. Sartin Contracting also indicated that relator's employment terminated because the employee "could not perform work."

{¶ 30} 16. Following an April 15, 2016 hearing, an SHO issued an order denying the PTD application. The SHO's order explains:

> The Injured Worker long ago abandoned the workforce.
>
> Voluntary abandonment of workforce precludes compensation for permanent total disability. *State ex rel. Kelsey Hayes Co. v. Grashel,* 138 Ohio St.3d 297, 2013-Ohio-4959 * * *.
>
> The Injured Worker last worked in August of 1986. The Injured Worker did testify to working two weeks in 2015, but, for reasons that will be explained later in this decision, this brief return to work is not found to represent a good faith effort to return to work.
>
> The Injured Worker testified to being on social security disability since 1986.
>
> At hearing on 03/15/1994, the Injured Worker was denied permanent total disability by the Industrial Commission for the first time. The order from this hearing notes that the Injured Worker is only 41 years of age. The order states the Injured Worker is capable of any work short of heavy labor and the Injured Worker can perform unlimited lifting within a 25 pound weight restriction.
>
> At hearing on 05/21/1996, the Injured Worker was again denied permanent total disability.
>
> At hearing on 12/15/1998, the Injured Worker was denied permanent total disability. This order states the Injured Worker has not attempted rehabilitation since 1987.
>
> A complete review of the record was done in this case. There is a closure report dated 09/11/1987 from Patricia A. Williams, Rehabilitation consultant. This report states in part:
>
> "Several attempts have been made by the private rehabilitation provider to coordinate evaluations, psychological, physical and vocational, with the J. Leonard

Camera Center. Mr. Williams has not presented himself for either appointment, nor has he indicated an interest to proceed with rehabilitation evaluations or services."

The Industrial Commission once again after a hearing on 01/09/2001 denied the Injured Worker's permanent total disability application.

At hearing on 07/30/2013, a Staff Hearing Officer denied the Injured Worker's request for temporary total disability compensation. This order found that the Injured Worker had voluntarily abandoned the work force. This order found that since the denial of permanent total disability in 2001 that there is no documentation or any evidence that the Injured Worker has made any attempt to find work within his physical restrictions as assessed in the 2001 order.

The order from the hearing of 01/09/2001 states that the Injured Worker last worked in 1982, when he was only 29 years of age. The Injured Worker at hearing testified that he last worked in 1986. Assuming the later date of 1986, the Injured Worker would have only been 34 years of age when he last worked.

There is no persuasive evidence on record that the Injured Worker since 1986 has ever made any attempt to return to work. The Injured Worker's testimony regarding a return to work in 2015 is not found to represent a legitimate attempt to return to work.

The Injured Worker testified at hearing that since the first denial of permanent total disability at hearing on 03/15/1994, excluding the two week job in 2015, that he has never tried to return to work. The Injured Worker was only 41 years of age in 1994.

The award of permanent total disability is an award of last resort. Where an Injured Worker is deemed capable of working, he is required to make a good faith effort to return to work. The Injured Worker has never done so in this case.

The Injured Worker at hearing did testify to working two weeks in 2015. The Injured Worker testified that in 2015 he called a friend and that his friend gave him a job driving a gravel truck. The Injured Worker testified that he was unable to do this job after two weeks.

The Injured Worker's testimony as regards to a return to work in 2015 is not found to represent a good faith effort to return to work. The Injured Worker in the last denial of permanent total disability was found to be limited to sedentary work. Driving a gravel truck would not be classified as sedentary work.

Further an attempt to return to work after almost three decades of inactivity is not found to represent a genuine attempt to return to work. The Injured Worker's brief work in 2015 in light of the history of this claim represents a pretense and not a good faith effort to return to work.

The Injured Worker was in his thirties when he last worked. He failed to attempt to work until he was over sixty years of age. It is within general knowledge that inactivity atrophies the mind and the body. It is impossible to evaluate where the Injured Worker would presently be if he had vigorously purs[u]ed rehabilitation and a return to work. The facts are that the Injured Worker never tried to return to work. The Injured Worker is now at the age of traditional retirement. The Injured Worker made a choice not to use his time over the last decades to return to work. An award of permanent total disability is not made simply because the Injured Worker has grown old over the passage of time.

The Injured Worker has previously been found by Commission order to have voluntarily abandoned the work force and the evidence supports that conclusion.

{¶ 31} 17. On February 28, 2017, relator, Ernest Williams, filed this mandamus action.

Conclusions of Law:

{¶ 32} The issue is whether the commission, through its SHO's order of April 15, 2016, abused its discretion in determining that relator did not re-establish eligibility for PTD compensation by working for Sartin Contracting during a two-week period ending in May 2015.

{¶ 33} Finding no abuse of discretion, it is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.

**Basic Law-PTD-Workforce Abandonment**

{¶ 34} Ohio Adm.Code 4121-3-34 provides the commission's rules for the adjudication of PTD applications.

{¶ 35} Thereunder, Ohio Adm.Code 4121-3-34(D) provides guidelines for the adjudication of PTD applications.

> Ohio Adm.Code 4121-3-34(D)(1)(d) currently provides:
>
> If, after hearing, the adjudicator finds that the injured worker voluntarily removed himself or herself from the work force, the injured worker shall be found not to be permanently and totally disabled. If evidence of voluntary removal or retirement is brought into issue, the adjudicator shall consider evidence that is submitted of the injured worker's medical condition at or near the time of removal/retirement.

{¶ 36} Paragraphs two and three of the syllabus of *State ex rel. Baker Material Handling Corp. v. Indus. Comm.*, 69 Ohio St.3d 202 (1994) state:

> [Two] An employee who retires prior to becoming permanently and totally disabled is precluded from eligibility for permanent total disability compensation only if the retirement is voluntary and constitutes an abandonment of the entire job market. * * *
>
> [Three] An employee who retires subsequent to becoming permanently and totally disabled is not precluded from eligibility for permanent total disability compensation regardless of the nature or extent of the retirement.

**Basic Law-TTD-Voluntary Abandonment of the
Former Position of Employment**

{¶ 37} The syllabus of *State ex rel. McCoy v. Dedicated Transport, Inc.*, 97 Ohio St.3d 25, 2002-Ohio-5305 states:

> A claimant who voluntarily abandoned his or her former position of employment or who was fired under circumstances that amount to a voluntary abandonment of the former position will be eligible to receive temporary total disability compensation pursuant to R.C. 4123.56 if he or she reenters the work force and, due to the original industrial injury, becomes temporarily and totally disabled while working at his or her new job.

{¶ 38} In *State ex rel. Eckerly v. Indus. Comm.*, 105 Ohio St.3d 428, 2005-Ohio-2587, the Supreme Court of Ohio had occasion to further explain the *McCoy* holding:

> The present claimant seemingly misunderstands *McCoy*. He appears to believe that so long as he establishes that he obtained another job -- if even for a day -- at some point after his departure from Tech II, TTC eligibility is forever after reestablished. Unfortunately, this belief overlooks the tenet that is key to *McCoy* and all other TTC cases before and after: that the industrial injury *must remove the claimant from his or her job*. This requirement obviously cannot be satisfied if claimant had no job *at the time of the alleged disability*.
>
> In the case at bar, there is no evidence that claimant was employed in February 2003 when the requested period of TTC was alleged to have begun. To the contrary, it appears that claimant was almost entirely unemployed in the two years after his discharge from Tech II, earning only approximately $ 800 during that period.

(Emphasis sic.) *Id.* at ¶ 9-10.

{¶ 39} In *State ex rel. Hassan v. Marsh Bldg. Prods.*, 100 Ohio St.3d 300, 2003-Ohio-6022, the claimant, Abdikarim Hassan, voluntarily abandoned his former position of employment ten days after his industrial injury. Approximately seven weeks later, a temporary employment agency placed Hassan with Airborne Express. For the next three weeks, he worked eight, nineteen and one-half, and 24 hours respectively. He allegedly could no longer continue after the third week due to his allowed conditions.

{¶ 40} After the commission denied Hassan's request for TTD compensation, he filed a mandamus action in this court. This court issued a limited writ. Upon an appeal as of right, the Supreme Court of Ohio affirmed this court's judgment. The *Hassan* court explained:

> The final objection to TTC payment involves the extent of claimant's subsequent employment with Airborne Express. In this case, we are persuaded by claimant's assertion that because any employment--no matter how insubstantial--bars TTC, see *State ex rel. Blabac v. Indus. Comm.* (1999), 87 Ohio St.3d 113, 1999 Ohio 249, 717 N.E.2d 336, then any employment should be sufficient to invoke *McCoy*.

*Id.* at ¶ 8.

## Analysis

{¶ 41} Here, citing *McCoy* and *Hassan*, relator argues that he re-established eligibility for PTD compensation by working as a truck driver for Sartin Contracting for a two-week period ending in May 2015. He suggests that the July 7, 2015 report of Dr. Gutti proves that he became disabled by the allowed conditions while employed as a truck driver and, thus, had to quit his job because of his industrial injury. Again on July 7, 2015, Dr. Gutti wrote:

> Because of the ongoing pain, I do not believe he will be able to participate in gainful employment at this time and I believe he is permanently total disabled.

{¶ 42} Assuming for the sake of argument that *McCoy* and *Hassan,* both TTD cases, provide guidance as to how a PTD applicant can re-establish his eligibility after a voluntary abandonment of the workforce, neither case removes the commission's authority in weighing the credibility of the evidence before it. That is, the commission was not required to accept the July 7, 2015 report of Dr. Gutti as some evidence supporting the reinstatement of PTD eligibility. The commission alone is responsible for the evaluation of the weight and credibility of the evidence before it. *State ex rel. Burley v. Coil Packing, Inc.*, 31 Ohio St.3d 18 (1987).

{¶ 43} Under *McCoy*, TTD eligibility is re-established if the claimant re-enters the workforce and, due to the original industrial injury, becomes disabled while working at his or her new job. Thus, under *McCoy*, the claimant has the burden to show that he became disabled while working at his new job. Meeting that burden here requires submission of credible medical evidence proving that the alleged disability actually arose during the new job rather than before the new job. That is, relator must show by medical evidence that it was his industrial injury that compelled him to quit his new job.

{¶ 44} As earlier noted, the SHO's order of April 15, 2016 finds:

> The Injured Worker's testimony as regards to a return to work in 2015 is not found to represent a good faith effort to return to work. The Injured Worker in the last denial of permanent total disability was found to be limited to sedentary work. Driving a gravel truck would not be classified as sedentary work.

Further an attempt to return to work after almost three decades of inactivity is not found to represent a genuine attempt to return to work. The Injured Worker's brief work in 2015 in light of the history of this claim represents a pretense and not a good faith effort to return to work.

{¶ 45} Relator argues that the commission abused its discretion in finding that his return to work at Sartin Contracting was not made in good faith. The magistrate disagrees.

{¶ 46} It was appropriate for the commission to view the two-week return to work in 2015 in light of the history of this industrial claim which shows "almost three decades of inactivity." That neither R.C. 4123.58 nor any administrative rule specifically provides for a "good faith" analysis by the commission does not render the commission finding an abuse of discretion.

{¶ 47} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.

/S/ MAGISTRATE
KENNETH W. MACKE

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).